# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | | |
|---|---|---|
| Richard Hershey, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 5:21-CV-00460 TAD |
| | ) | |
| CITY OF BOSSIER CITY | ) | |
| | ) | |
| Serve:  Mayor Lorenz Walker | ) | |
| P.O. Box 5337 | ) | |
| Bossier City, LA 71171-5337 | ) | |
| and | ) | |
| | ) | |
| DEPUTY MARSHAL BOBBY GILBERT, | ) | |
| in His Individual Capacity Acting as a | ) | |
| Deputy Marshal of the Bossier City | ) | |
| Marshal's Office | ) | |
| | ) | |
| Serve:  Deputy Marshal Gilbert | ) | |
| Badge Number 3913 | ) | |
| Bossier City Marshal's Office | ) | |
| 620 Benton Road | ) | |
| Bossier City, LA  71111 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OFFICER DANIEL STOLL, | ) | |
| in His Individual Capacity Acting as a | ) | |
| Police Officer of the Bossier City Police | ) | |
| Department, | ) | |
| | ) | |
| Serve:  Officer Daniel Stoll | ) | |
| Badge Number 4085 | ) | |
| Bossier City Police Department | ) | |
| 620 Benton Road | ) | |
| Bossier City, LA  71111 | ) | |
| | ) | |
| and | ) | |
| | ) | |

Exhibit 1

| | |
|---|---|
| DAVID SMITH<br>in His Individual Capacity Acting as a<br>Security Officer of CenturyLink Center, | )<br>)<br>)<br>) |
| Serve: Officer David Smith<br>          2 East Point<br>          Benton, LA 71006 | )<br>)<br>) |
| and | )<br>) |
| TYSHON HARVEY<br>in His Individual Capacity Acting as a<br>Security Officer of CenturyLink Center, | )<br>)<br>)<br>) |
| Serve: Tyshon Harvey<br>          Bossier City Police Department<br>          620 Benton Road<br>          Bossier City, LA 71111 | )<br>)<br>)<br>)<br>) |
| and | )<br>) |
| EUGENE TUCKER,<br>in His Individual Capacity Acting as a<br>Security Officer of CenturyLink Center, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**FIRST AMENDED COMPLAINT PURSUANT TO 42 U.S.C. SECTION 1983 FOR VIOLATION OF CIVIL RIGHTS PROTECTED BY THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

**Preliminary Statement**

1. This is a civil rights action in which Plaintiff Richard Hershey seeks relief for violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and by the United States Constitution, including its First and Fourteenth Amendments. Plaintiff seeks compensatory damages, declaratory judgment and

injunctive relief, an award of costs and attorney's fees under 42 U.S.C. § 1988, and such other and further relief as this court deems equitable and just.

## Jurisdiction

2. This action is brought pursuant to the Constitution of the United States, including its First and Fourteenth Amendments and pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred upon this Court by 42 U.S.C. § 1983 and 28 U.S.C. § 1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's Constitutional Rights.

## Venue

3. Venue is proper for the United States District Court, Western District of Louisiana, Shreveport Division, pursuant to 28 U.S.C. § 1391 (a), (b), and (c).

## Parties

4. Plaintiff Richard Hershey (hereinafter "Hershey") is a senior citizen and resident of the United States, and at all times relevant herein was a resident of the State of Missouri.

5. Defendant City of Bossier City, Louisiana, (hereinafter "City"), is a municipality which owns and operates a public facility known as the Bossier City Arena, which at all times relevant herein was known as the CenturyLink Center.

6. Defendant Deputy Marshal Bobby Gilbert (hereinafter "Gilbert"), badge number 3913, was at all times relevant herein acting under color of Louisiana state

law as a deputy marshal of the City of Bossier City, Louisiana. Defendant Gilbert is named herein in his individual capacity.

7. Defendant Daniel Stoll, badge number 4085, was at all times relevant herein acting under color of Louisiana state law as a police officer of the City of Bossier City, Louisiana. Defendant Stoll is named in his individual capacity.

8. Defendant David Smith was at all times relevant herein acting under color of Louisiana state law as a security officer of the CenturyLink Center and at all times relevant herein was a willing participant in joint action with state actors. David Smith is named in his individual capacity.

9. Defendant Tyshon Harvey was at all times relevant herein acting under color of Louisiana state law as a security officer of the CenturyLink Center and at all times relevant herein was a willing participant in joint action with state actors. Tyshon Harvey is named in his individual capacity.

10. Defendant Eugene Tucker was at all times relevant herein acting under color of Louisiana state law as a security officer of the CenturyLink Center and at all times relevant herein was a willing participant in joint action with state actors. Eugene Tucker is named in his individual capacity.

11. At all times relevant herein, all Defendants were acting in concert and should, therefore, be held liable individually, jointly, and in solido.

12. Plaintiff, through his counsel, used due diligence in order to positively identify Daniel Stoll, named in the original Complaint as John Doe I, Badge number 4085, named herein, by calling the Bossier City Police Department, the Bossier City Marshal's Office and the Bossier Parish Sheriff's Office requesting the identity of Doe I, Badge number 4085, but was advised, perhaps mistakenly, by each of those law enforcement agencies that they had no such badge number in use on the date in question in this Complaint.

13. Plaintiff, through his counsel, used due diligence in order to positively identify all of the Defendants who were named as John Doe Defendants in the original Complaint and who are now specifically named herein by requesting, pursuant to a Freedom of Information Act request to the Bossier City Arena, previously known as the CenturyLink Center, for a copy of the incident report pertaining to Plaintiff's removal from the property, but was told that the Freedom of Information Act does not apply to ASM Global, the management company hired to manage the Bossier City Arena, and that the report would not be provided. [Exhibit 1, attached hereto]

## Applicable Facts

14. On the afternoon of February 28, 2020, Plaintiff Hershey was on the public sidewalk on the grounds of CenturyLink Center.

15. At all times relevant herein, Hershey was distributing free, educational, noncommercial, religious booklets on behalf of a nonprofit organization named the Christian Vegetarian Association.

16. Hershey is a vegetarian advocate whose ethical beliefs compel him to share his message with others.

17. Hershey is compensated by various nonprofit organizations for his advocacy and distribution of literature.

18. CenturyLink Center does not have any formal application process for requesting permission to distribute leaflets.

19. CenturyLink Center does not have any written or official policy prohibiting, regulating or licensing the distribution of leaflets on its grounds.

20. Defendant the City has a long-standing custom of allowing police officers, employees and/or officials of CenturyLink Center to use their unfettered discretion to arbitrarily and capriciously remove individuals who are peacefully exercising their First Amendment rights from the CenturyLink property.

21. The CenturyLink Center is situated in a public park encompassed by the boundary streets of Arthur Ray Teague Parkway, Angelle Drive, CenturyLink Center Drive, and Reeves Marine Drive which are connected to the public streets and sidewalks through the park leading to the CenturyLink Center. There is no

gate or restriction on access to any of the public sidewalks and streets through the park to the CenturyLink Center.

22. Hershey's leafleting activity was entirely peaceable and non-aggressive in all respects and was designed only to share information concerning vegetarian issues with those who were interested in receiving the information.

23. At no time relevant herein did Hershey ever create a disturbance or interference with pedestrian or vehicular traffic or violate any other law.

24. On February 28, 2020, there was a Christian rock concert known as Winter Jam being held at CenturyLink Center.

25. Within the park surrounding the Center, the sidewalks, including the sidewalk where Hershey was distributing his literature, streets, staircases, grassy areas, and parking lots were all open to the public.

26. Because of potential safety concerns, Hershey did not distribute his booklets on the staircases or in the parking lots.

27. At least one other person, who was not associated with Hershey, was distributing commercial advertisement cards for an internet radio station, Power 927 FM, and Hershey accepted a card from that leafleteer on the sidewalk on outdoor grounds of CenturyLink Center.

28.  After Hershey had begun to distribute booklets, Hershey was approached by Defendants Gilbert, acting under color of Louisiana law as a Deputy City Marshal of Bossier City; Officer Daniel Stoll, acting under of color of Louisiana law as police officer of Bossier City; David Smith, acting under of color of Louisiana law as a security officer of the CenturyLink Center and at all times relevant herein was a willing participant in joint action with state actors; Tyshon Harvey, acting under color of Louisiana law as a security officer for CenturyLink Center and as a willing participant in joint action with state actors; Eugene Tucker, acting under color of Louisiana law as a security officer for CenturyLink Center and as a willing participant in joint action with state actors.

29.  Gilbert approached Hershey from the rear and made unwanted physical contact with Hershey by placing his hand on Hershey while Hershey was distributing his literature outdoors on the grounds of the CenturyLink Center.

30.  Hershey turned around to see defendants Gilbert, Stoll, and Harvey standing there, and Hershey objected to Gilbert's unwanted physical contact.

31.  Gilbert waved a pair of handcuffs at Hershey.

32.  Stoll told Hershey that he had been told to leave the public park.

33.  Hershey replied that nobody had told him to leave.

34.  Gilbert told Hershey that he had bracelets for Hershey, that he would put the bracelets on him, and that he would take him to jail.

35. Hershey attempted to explain that he had a legal right to hand out his literature, but Gilbert cut him off and would not allow him to explain.

36. Gilbert told Hershey that he was on private property, that he had to leave, that he would be arrested if he did not leave, and that he could not return.

37. Gilbert stated to Hershey as reason for stopping his leafleting to the attendees being that people were there to have a good time.

38. Although Hershey believed the order to be unlawful, fearing arrest, he agreed to leave.

39. Hershey attempted to leave, but Gilbert was blocking his egress.

40. Defendants Smith and Tucker arrived shortly thereafter.

41. Gilbert asked Hershey why he wasn't leaving, and Hershey replied that Gilbert was blocking his egress.

42. Gilbert then allowed Hershey to leave.

43. Gilbert informed Hershey that if he returned, he would go to jail.

44. As Hershey was leaving, he inquired about the commercial literature distribution, and Hershey showed the card from the radio station Power 927 FM to Defendants Gilbert, Stoll, Harvey, Smith, and Tucker.

45. Defendant Harvey replied that Hershey's literature had not been approved by CenturyLink Center, and that Hershey had to submit his literature in advance for approval.

46. Hershey asked again why they were allowing the commercial literature distribution.

47. Harvey replied that because he didn't know if the other literature had been approved, but that Hershey's literature was not approved so he had to leave.

48. Smith and Tucker were present during Hershey's ejectment from the park surrounding CenturyLink Center, and, acting jointly with the other Defendants, used their command presence to assist in the removal of Hershey from the park by Defendant Deputy Marshal Gilbert, Officer Stoll, and Harvey.

49. Hershey left the grounds of the park outside of CenturyLink Center without handing out any more of his literature while the other leafleteer continued to hand out her commercial literature without interference from Bossier City officials.

50. There were no alternate avenues available to Hershey for handing out his literature to the concert attendees.

51. Fearing arrest and jailing, Hershey has not returned to the CenturyLink grounds to distribute his literature or for any other reason.

## Count I

### DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF PURSUANT TO 42 U.S.C. SECTION 1983 AND THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

52. The sidewalks traversing the CenturyLink park grounds and the grassy areas constitute a traditional public forum for the exercise of First Amendment rights.

53. In the alternative, the sidewalks traversing the CenturyLink Center park grounds and the grassy areas constitute a designated public forum for the exercise of First Amendment rights.

54. Hershey had a right protected by the First Amendment to the United States Constitution to distribute literature on the sidewalks on the outdoor grounds of CenturyLink Center.

55. At all relevant times, Defendant the City did not have any official or unofficial viewpoint neutral policy regulating speech activities protected by the First Amendment to the United States Constitution and restricting access to the CenturyLink Center public sidewalks in the park in which the CenturyLink Center is located.

56. Defendant City's custom or policy of requiring prior approval of a leaflet before the leafleteer is allowed to distribute them on the CenturyLink property is a prior restraint on speech and, therefore, bears a "heavy presumption of

unconstitutionality." *Chiu v. Plano Independent School Dist.*, 339 F.3d 273, 280-81 (5th Cir. 2003).

57. Defendant City's custom or policy of requiring prior approval of a leaflet before the leafleteer is allowed to distribute it on the CenturyLink property is facially unconstitutional because it is over-broad in that it does not provide for a "specified brief period" of time within which the CenturyLink Center official shall approve or deny the request to distribute the leaflet on the CenturyLink Center property, and because it does not provide for expeditious judicial review, and that it does not provide that the censor bear the burden of going to court to suppress the speech. *Freedman v. State of Md.*, 380 U.S. 51, 58-59 (1965).

58. Defendant City's failure to have a policy, or by acquiescence in the arbitrary and capricious denial of citizens' First Amendment rights by the CenturyLink Center officials, or by failing to train its police officers, employees and officials that the Bossier City Arena, aka CenturyLink Center, is public property and a traditional public forum, has created an unconstitutional custom by the City of Bossier City, Louisiana. That unconstitutional custom or policy was the moving force behind the security officers of CenturyLink Center, police officers of the City, and Deputy Marshal of the City's, interference with Hershey's exercise of his First Amendment rights on the CenturyLink Center outdoor grounds.

59. Defendant City's policy or custom as applied to Hershey is unlawful in at least the following ways:

   a. It restricts more speech than necessary to achieve a significant government interest.

   b. It restricts more speech than necessary to achieve a reasonable government interest.

   c. It allows arbitrary and capricious enforcement.

   d. It is based on content and viewpoint discrimination.

   e. It utilizes prior restraint.

   f. It preferentially allows commercial speech while prohibiting noncommercial speech.

   g. It is not narrowly tailored to achieve a compelling, significant or legitimate government interest.

   h. It provides no alternate channels for speech.

60. Hershey suffers and will continue to suffer irreparable harm by Defendants' interference with the exercise of his First Amendment rights as applied to the states by the Fourteenth Amendment.

61. Plaintiff Hershey has a fair chance of prevailing on the merits of his claims, thus justifying a preliminary injunction in this matter. To obtain a preliminary injunction, a movant must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury to the movant outweighs the injury to the party to be enjoined; and (4) that granting the injunction will not disserve the public interest. *Jefferson Cmty. Health Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017).

62. Without action by this Court, the denial of rights protected by the First and Fourteenth Amendments to the United States Constitution is capable of repetition in a manner that evades meaningful judicial review.

63. No harm will be inflicted upon Defendants should an injunction issue.

64. The issuance of such a preliminary injunction is in the public interest.

**WHEREFORE,** Plaintiff Richard Hershey prays for declaratory judgment and injunctive relief, including a preliminary injunction against Defendant the City, finding that the First and Fourteenth Amendments protect Plaintiff's right to engage in peaceable distribution of leaflets on the public sidewalks and grassy areas of the CenturyLink Center outdoor grounds, holding that the First and Fourteenth Amendments protect Plaintiff's right to engage in peaceable distribution of leaflets on all sidewalks and grassy areas, declaring the policy or custom applied to Hershey to be unlawful, enjoining Defendant the City

from enforcing the policy or custom applied to Hershey, and further enjoining Defendant the City from interfering with Plaintiff's exercise of his First Amendment rights, for costs and attorney's fees pursuant to 42 U.S.C. § 1988, and for such other and further relief as to this Court seems just and proper.

## Count II

**DAMAGES AGAINST DEFENDANTS THE CITY, DEPUTY MARSHAL GILBERT, OFFICER DANIEL STOLL, OFFICER DAVID SMITH, TYSHON HARVEY, AND EUGENE TUCKER PURSUANT TO 42 U.S.C. SECTION 1983 AND THE FIRST AND FOURTEENTH AMENDMENTS**

65. As a direct and proximate result of the Defendants the City, Gilbert, Stoll, Smith, Harvey, and Tucker's, exclusion of Hershey from the public forum on the sidewalk on the outdoor grounds of CenturyLink Center, Hershey suffered the following damages

   a. Loss of his rights to advocate and distribute literature in a public forum secured by the First and Fourteenth Amendments of the United States Constitution;

   b. Loss of income derived from advocacy organizations;

   c. Deprivation of his freedom to be present on the grounds of the CenturyLink Center on an ongoing basis;

    d. Humiliation, embarrassment, psychological and emotional injury and stress as a result of being subject to removal from the public forum and banning from returning to the public forum;

    e. Travel, lodging, and meal expense.

66. The Defendants the City and the Defendants named in their individual capacity are not entitled to qualified immunity because Hershey's right to free speech by his advocacy and distribution of literature have been established by binding precedent long before the events described herein and that no reasonable police officer, deputy marshal, or security officer could believe that their actions were a constitutional exercise of authority.

**WHEREFORE**, Plaintiff Richard Hershey prays for judgment against Defendants the City, Gilbert, Stoll, Smith, Harvey, and Tucker for pecuniary damages pursuant to 42 U.S.C. § 1983 for deprivation of his rights of speech protected by the First Amendment to the United States Constitution; for costs and attorney's fees pursuant to 42 U.S.C. § 1988; for psychological and emotional injury, stress, humiliation, embarrassment, loss of income, costs, and expenses; and for such other and further relief as to this Court seems just and proper.

### Count III

### DAMAGES AGAINST THE CITY FOR FAILURE TO TRAIN

67. Defendant the City failed to provide adequate training for its law enforcement officers and others allowed to serve as security personnel at the

Bossier City Arena by failing to train them that the Bossier City Arena and the park surrounding it are public property and, therefore, the citizens using that property are entitled their constitutional rights guaranteed by the First Amendment.

68.     The lack of training by the City led to the belief by Defendant Deputy Marshal Gilbert and the other individually named Defendants that the Bossier City Arena and the park surrounding it are private property and, thus, citizens could be ordered off of the property with no regard to the citizen's First Amendment rights.

69.     Defendant the City failed to train its law enforcement officers and others allowed to serve as security personnel at the Bossier City Arena how to take into account the First Amendment rights of citizens on the Arena property by enforcing only reasonable time place and manner restrictions on the rights of citizens as opposed to blanket denials of access to the property.

70.     The lack of training was so great and so inadequate and the risk of constitutional harm was so obvious by the failure to train the delineation between public and private property, that it became an unconstitutional custom or policy of the City and was the moving force behind, the but for cause of, and the proximate cause of Hershey's removal from the property on February 28, 2020.

**WHEREFORE**, Plaintiff Richard Hershey prays for judgment against Defendant the City, for pecuniary damages pursuant to 42 U.S.C. § 1983 for deprivation of his rights of

speech protected by the First Amendment to the United States Constitution; for costs and attorney's fees pursuant to 42 U.S.C. § 1988; for psychological and emotional injury, stress, humiliation, embarrassment, loss of income, costs, and expenses; and for such other and further relief as to this Court seems just and proper.

                                              Respectfully submitted,

                                              /s/ M. Keith Wren
                                            M. Keith Wren, Ark. Bar #94107
                                            11300 Executive Center Dr.
                                            Suite A
                                            Little Rock, AR 72211
                                            tel. 501-223-0025
                                            fax. 501-223-5309
                                            mkwren@wrenlawfirm.com


                                            s/ Sarah R. Giglio
                                            Sarah R. Giglio, LA Bar Roll #: 36272
                                            Attorney at Law
                                            Gilmer & Giglio, LLC
                                            3541 Youree Drive
                                            Shreveport, Louisiana 71105
                                            tel. 318-459-9111
                                            fax. 318-602-4716
                                            sarah@gilmergiglio.com


                                            *Attorneys for Plaintiff Richard Hershey*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 19, 2021, I served a copy of the above and foregoing on counsel of record for the Defendants via the Court's CM/ECF filing system.

Layne A. Clark
Marjorie L. Frazier
Reid A. Jones
P.O. Box 21990
Shreveport, LA 71120-1990

                                                                          <u> /s/ M. Keith Wren</u>