UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RICHARD HERSHEY

CIVIL ACTION NO. 5:21-cv-00460

VERSUS

JUDGE TERRY A. DOUGHTY

CITY OF BOSSIER CITY, ET AL.

MAGISTRATE JUDGE HORNSBY

## MEMORANDUM IN SUPPORT OF BOSSIER CITY DEFENDANTS' MOTION TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS

WIENER WEISS & MADISON
A Professional Corporation

By: */s/ Reid A. Jones*_____
        Layne A. Clark, Jr. (#23686)
        Marjorie L. Frazier (#32991)
        Reid A. Jones (#34611)
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA  71120-1990
Telephone:    (318) 226-9100
Facsimile:    (318) 424-5128
Email:        lclark@wwmlaw.com
Email:        mfrazier@wwmlaw.com
Email:        rjones@wwmlaw.com

**ATTORNEYS FOR DEFENDANTS, CITY OF BOSSIER CITY, DEPUTY MARSHAL ROBERT GILBERT, AND OFFICER DANIEL STOLL**

## TABLE OF CONTENTS

Table of Contents ............................................................................................................... i

Table of Authorities ........................................................................................................ iii

Plaintiff has no actionable Section 1983 claim ................................................................ 1

Plaintiff failed to state a *Monell* claim against Bossier City .......................................... 2

Deputy Marshal Gilbert and Officer Stoll are entitled to Qualified Immunity .............. 2

Background ........................................................................................................................ 2

Argument........................................................................................................................... 3

   A.   Rule 12(b)(6) and 12(c) Standard.................................................................. 3

   B.   Plaintiff failed to state a claim for relief against Bossier City Defendants
       Under 42 U.S.C. § 1983 ............................................................................... 4

      1.   Forum Analysis .................................................................................. 4
         a.   Plaintiff has not established that he was leafletting in either a
             Traditional public forum or designated public forum ...................... 5
         b.   Property adjacent to sports and event arena spaces are
             limited or nonpublic forums during events ...................................... 8
         c.   Because Plaintiff's claims rely on the premise that he was excluded
             From a traditional public or designated or designated forum, he failed
             To state a First Amendment claim .................................................... 9
         d.   Even under the framework for reviewing restrictions on speech in
             limited or nonpublic forums, Plaintiff has not alleged that barring
             him from leafletting was unreasonable or discriminatory based on the
             content of his speech ........................................................................ 9

   C.   Plaintiff failed to state a *Monell* claim against Bossier City ........................................ 12

      1.   No official policy ................................................................. 13
      2.   No custom ............................................................................ 15
      3.   No knowledge of a policymaker .......................................... 16
      4.   No constitutional right violation .......................................... 16
      5.   No 'moving force' ................................................................ 17
      6.   Insufficiently pled training allegations................................ 17

D.    Deputy Marshal Gilbert and Officer Stoll are Entitled to Qualified Immunity ............ 18

1.    Element 1:  No actual constitutional right violation .......................................... 19
2.    Element 2:  No clearly established right ............................................................. 19
    a.    Plaintiff's right to leaflet on the sidewalk of the Center
          during events was not clearly established ................................................... 20

E.    Plaintiff's Request for Injunctive and Declaratory Relief should be Denied ................. 21

Conclusion ................................................................................................................................ 22

Certificate of Service .............................................................................................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agema v. City of Allegan*,
   826 F.3d 326 (6th Cir. 2016) ....................................................................................7

*Aguilar v. Louisiana Dep't of Corr.*,
   2017 WL 3974961 (W.D. La. Aug. 17, 2017).........................................................22

*Ashcroft v. al-Kidd*,
   563 U.S. 731, 131 S. Ct. 2074 (2011)....................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................3, 9

*Baker v. Putnal*,
   75 F.3d 190 (5th Cir. 1996) ....................................................................................18

*Ball v. City of Lincoln, Nebraska*,
   870 F.3d 722 (8th Cir. 2017) ...............................................................................8, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................3, 9

*Boyd v. City of Hermosa Beach*,
   2007 WL 9717630 (C.D. Cal. Sept. 11, 2007) .........................................................9

*Brumfield v. Hollins*,
   551 F.3d 322 (5th Cir. 2008) ..................................................................................19

*Calash v. City of Bridgeport*,
   788 F.2d 80 (2d Cir. 1986).......................................................................................8

*Chiu v. Plano Indep. Sch. Dist.*,
   260 F.3d 330 (5th Cir. 2001) ..........................................................................5, 10, 21

Chiu v. Plano Independent School Dist.,
   339 F.3d 273 (5th Cir. 2003) ..................................................................................13

*Connick v. Thompson*,
   563 U.S. 51, 131 S. Ct. 1350 (2011)........................................................................12

*Cooper v. Brown*,
   844 F.3d 517 (5th Cir. 2016) ..................................................................................19

iii

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
   473 U.S. 788, 105 S. Ct. 3439 (1985) ....................................................................7, 10

*Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*,
   675 F.3d 849 (5th Cir. 2012) ..............................................................................17

*Doe v. Myspace, Inc.*,
   528 F.3d 413 (5th Cir. 2008) ................................................................................4

*Fontenot v. City of Houston*,
   647 F. App'x 402 (5th Cir. 2016) .........................................................................16

*Fraire v. Arlington*,
   957 F.2d 1268 (5th Cir. 1992) ..............................................................................13

Freedman v. State of Md.,
   380 U.S. 51 (1965).............................................................................................13

*Harlow v. Fitzgerald*,
   457 U.S. 800, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)..............................................18

*Heffron v. International Soc'y for Krishna Consciousness*,
   452 U.S. 640 (1981).............................................................................................4

*Hershey v. Goldstein*,
   938 F. Supp. 2d 491 (S.D.N.Y. 2013)..................................................................1, 8

*Hershey v. Kansas City Kansas Cmty. Coll.*,
   2017 WL 661581 (D. Kan. Feb. 17, 2017) ...............................................................1

*Hershey v. Multi-Purpose Civic Ctr. Facility Bd. for Pulaski Cty., Arkansas*,
   No. 4:18-CV-,2020 WL 4741900 (E.D. Ark. Aug. 14, 2020*)* .................................*passim*

*Hershey v. Turner*,
   2020 WL 1932911 (E.D. Okla. Apr. 21, 2020) .........................................................1

*Hershey v. Walker*,
   2013 WL 657873 (E.D. Mo. Feb. 22, 2013)..............................................................1

*Int'l Soc. for Krishna Consciousness, Inc. v. New Jersey Sports & Exposition Auth.*,
   691 F.2d 155 (3d Cir. 1982)................................................................................11

*Jett v. Dallas Independent School Dist.*,
   491 U.S. 701, 109 S.Ct. 2702, 105 (1989)..............................................................16

iv

*Johnson v. Johnson*,
  385 F.3d 503 (5th Cir. 2004) ........................................................................................4

*Kuerbitz v. Meisner*,
  2017 WL 4161111 (E.D. Mich. Sept. 20, 2017)...........................................................7

*McTernan v. City of York, Penn.*,
  577 F.3d 521 (3d Cir. 2009)........................................................................................8, 9

*Mitchell v. Gautreaux*,
  2017 WL 2346839 (M.D. La. May 30, 2017)................................................................16

*Monell v. Department of Social Services of City of New York*,
  436 U.S. 658, 98 S. Ct. 2018, (1978)...........................................................................12

*Morgan v. Swanson*,
  755 F.3d 757 (5th Cir. 2014) ......................................................................................21

*Morrow v. Meachum*,
  917 F.3d 870 (5th Cir. 2019) ......................................................................................20

*Mullenix v. Luna*,
  577 U.S. 7, 136 S. Ct. 305 (2015)...............................................................................18

*Pearson v. Callahan*,
  555 U.S. 223, 129 S. Ct. 808 (2009)............................................................................19

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
  460 U.S. 37, 103 S. Ct. 948 ......................................................................................4, 10

*Peterson v. City of Fort Worth, Tex.*,
  588 F.3d 838 (5th Cir. 2009) ......................................................................................15

*Piotrowski v. City of Houston*,
  237 F.3d 567 (5th Cir. 2001) ..............................................................................12, 15, 16

*Pomicter v. Luzerne Cty. Convention Ctr. Auth.*,
  939 F.3d 534 (3d Cir. 2019)........................................................................................8, 11

*Porter v. Epps*,
  659 F.3d 440 (5th Cir. 2011) ......................................................................................21

*Randle v. Lockwood*,
  666 F. App'x 333 (5th Cir. 2016) ................................................................................19

*Ratliff v. Aransas Cty., Texas*,
  948 F.3d 281 (5th Cir. 2020) ......................................................................................13

v

*Rivera v. Houston Indep. Sch. Dist.*,
349 F.3d 244 (5th Cir.2003) ..............................................................................12

*Roberts v. City of Shreveport*,
397 F.3d 287 (5th Cir. 2005) .............................................................................18

*Rodriguez v. Avita*,
871 F.2d 552 (5th Cir. 1989) .............................................................................16

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
515 U.S. 819, 115 S. Ct. 2510 (1995).................................................................11

*Roy v. City of Monroe*,
2018 WL 4120013 (W.D. La. Aug. 29, 2018)........................................................4

*Salas v. Carpenter*,
980 F.2d 299 (5th Cir.1992) ...............................................................................19

*Spiller v. City of Texas City, Police Dep't*,
130 F.3d 162 (5th Cir. 1997) .........................................................................13, 17

*Tarver v. City of Edna*,
410 F.3d 745 (5th Cir. 2005) ..............................................................................20

*United States v. Grace*,
461 U.S. 171, 103 S. Ct. 1702 (1983)...............................................................6, 7

*United States v. Kokinda*,
497 U.S. 720, 110 S. Ct. 3115 (1990)....................................................................7

*Valle v. City of Houston*,
613 F.3d 536 (5th Cir. 2010) .........................................................................12, 16

*Vukadinovich v. Bd. of Sch. Trustees of Michigan City Area Sch.*,
978 F.2d 403 (7th Cir. 1992) ................................................................................7

*Webster v. City of Houston*,
735 F.2d 838 (5th Cir. 1984) ..............................................................................15

## **Statutes**

42 U.S.C. § 1983 .............................................................................................4, 22

**Rules**

Federal Rule of Civil Procedure 12 ..................................................................................................4

**Other Authorities**

Kaitlin Shire, You Can't Sit with Us: Limiting Free Speech in Sports Arenas and How the Tampa
   Bay Lightning Took Home Ice Advantage Too Far,
   24 Jeffrey S. Moorad Sports L.J. 81 (2017)..................................................................................8

**MAY IT PLEASE THE COURT:**

Plaintiff, Richard Hershey ("**Plaintiff**" or "**Hershey**"), is no stranger in the federal court system. His modus operandi is to travel around the country, touting his "Christian vegetarian" message on campuses, at concerts, and other venues. Then, when his pamphleteering activities invariably result run-ins with local authorities, Hershey files suit in federal court, claiming violation of his free speech rights.[1]

Defendants, City of Bossier City ("**Bossier City**"), Deputy Marshal Robert Gilbert ("**Deputy Marshal Gilbert**"), and Officer Daniel Stoll ("**Officer Stoll**")(sometimes collectively the "**Bossier City Defendants**"), show in this Memorandum in Support of their Motion to Dismiss and/or for Judgment on the Pleadings ("**Motion**"), that Hershey's claims should be dismissed, on grounds similar to those Hershey has lost in the past, including:

> ➢ **Plaintiff has no actionable Section 1983 claim.**

> • Plaintiff has not pleaded facts supporting a plausible First Amendment claim:

>> • The area in which Plaintiff was leafletting—a sidewalk adjacent to an event center—is neither a traditional public forum nor designated public forum during events;

>> • Plaintiff has not alleged any facts showing that Bossier City restricted him from leafletting based on the content of Plaintiff's speech, or that such restriction was unreasonable.

---

[1] (1) *Hershey v. Jasinski et al*, United States District Court, Western District of Missouri, St. Joseph Division, Docket No. 20-06088-CV-W-BP; (2) *Hershey v. Turner*, No. CIV-19-344-SPS, 2020 WL 1932911 (E.D. Okla. Apr. 21, 2020); (3) *Hershey v. Kansas City Kansas Cmty. Coll.*, No. 2:16-CV-2251-JTM, 2017 WL 661581 (D. Kan. Feb. 17, 2017); (4) *Hershey v. Goldstein*, 938 F. Supp. 2d 491 (S.D.N.Y. 2013); (5) *Hershey v. Multi-Purpose Civic Ctr. Facility Bd. for Pulaski Cty., Arkansas*, No. 4:18-CV-00476 BSM, 2020 WL 4741900 (E.D. Ark. Aug. 14, 2020);(6) *Hershey v. Walker*, No. 4:12CV01603 ERW, 2013 WL 657873 (E.D. Mo. Feb. 22, 2013); (7) *Hershey v. Thomas et al*, United States District Court, Eastern District of Arkansas, Central Division, Docket No. 4:20-cv-01397-KGB; (8) *Hershey v. Junior College District of St. Louis-St. Louis County et al*, United States District Court, Eastern District of Missouri, Docket No. 4:10-cv-1116; (9) *Hershey v. The Curators of University of Missouri et al*, United States District Court, Eastern District of Missouri, Docket No. 4:16-cv-1229; (10) *Hershey v. Junior College District of Central Southwest Missouri et al*, United States District Court, Western District of Missouri, Docket No. 6:14-cv-3375; (11) *Hershey v. The Curators of the University of Missouri, et al*, United States District Court, Western District of Missouri, Central Division, Docket No. 2:20-cv-04239-BCW; (12) *Hershey v. Oldham, et al*, United States District Court, Middle District of Tennessee, Docket No. 2:20-cv-0012; (13) *Hershey v. Oldham, et al*, United States District Court, Middle District of Tennessee, Docket No. 2:20-cv-0264.

➢ **Plaintiff failed to state a *Monell* claim against Bossier City.**

- He has not alleged any official Bossier City policy or a widespread pattern of similar conduct;

- A single statement from a person employed by a third party (not Bossier City) cannot be the basis for Bossier City policy; and

- The single incident giving rise to Plaintiff's suit is, by itself, woefully insufficient to establish a widespread pattern constituting a custom.

➢ **Deputy Marshal Gilbert and Officer Stoll are entitled to Qualified Immunity.**

- Plaintiff's unfettered right to leaflet on the sidewalk of the Center during events was not clearly established in February 2020.

## BACKGROUND

This Section 1983 action stems from Plaintiff's alleged ejection from the area surrounding the event space then-known as the CenturyLink Center (the "**Center**") on or about February 28, 2020.[2] Plaintiff is a self-described Christian vegetarian. [Rec. Doc. 17 at ¶ 15]. His job is to distribute advocacy-based literature containing religious or vegetarian-messaged materials. [*Id.* at ¶ 16]. Hershey travelled—ostensibly from his home in Missouri [*id.* at ¶¶ 4, 65e]—to Bossier City to distribute literature at the Center.

On the day in question, a Christian rock touring concert called "Winter Jam" was being held at the Center. [*Id.* at ¶ 24].[3] Plaintiff alleges that he was distributing leaflets on the "public sidewalk on the grounds" when Defendants instructed him to leave the premises or face arrest. [*Id.* at ¶¶ 14, 36]. Hershey says he complied and, out of fear, has not since returned. [*Id.* at ¶¶ 38, 51].

Plaintiff filed this civil rights suit on February 25, 2021, naming Bossier City, Deputy Marshal Gilbert, and several "John Doe" defendants. [Rec. Doc. 1]. Bossier City and Deputy Marshal Gilbert subsequently agreed to Plaintiff's request for expedited discovery regarding the

---

[2] In December 2020, Brookshire's Grocery Company acquired the naming rights to the Center.

[3] This "Winter Jam" concert is the same concert tour at issue in *Hershey v. Multi-Purpose Civic Ctr. Facility Bd. for Pulaski Cty., Arkansas*, No. 4:18-CV-00476 BSM, 2020 WL 4741900 (E.D. Ark. Aug. 14, 2020*)*.

identity of the John Doe defendants. [Rec. Doc. 11]. After Bossier City Defendants responded to Plaintiff's discovery requests, Plaintiff amended his Complaint to add as Defendants Officer Stoll along wither other CenturyLink employees. [Rec. Doc. 17].

Plaintiff's Amended Complaint sets forth three causes of action, all brought under Section 1983. Hershey seeks damages, injunctive and declaratory relief. He alleges, in inadequate and conclusory terms, that he was deprived of his First Amendment rights when he was prevented from distributing leaflets outside the Center. And, Plaintiff has not adequately alleged facts sufficient to support municipal liability with respect to Bossier City. Last, Plaintiff cannot overcome Deputy Marshal Gilbert's and Officer Stoll's qualified immunity defense. As a result, this Motion should be granted and Plaintiff's claims dismissed.

**ARGUMENT**

A.     **Rule 12(b)(6) and 12(c) Standard.**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Mere conclusory statements in a complaint – such as "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). Similarly, a complaint does not "suffice if it tenders 'naked' assertion[s] devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *See Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)).

3

**B.**     **<u>Plaintiff failed to state a claim for relief against Bossier City Defendants under 42 U.S.C. § 1983</u>.**

Plaintiff alleges in his Complaint that Bossier City Defendants violated his First Amendment right of free expression when Deputy Marshal Gilbert, Officer Stoll, and others prevented him from leafletting in and around the Center. [Rec. Doc. 17]. [4] These claims fail as a matter of law because Hershey has not adequately alleged that he was leafletting in a traditional or designated public forum. Nor has Plaintiff alleged that restricting him from leafletting at that place and time was unreasonable or was based on the content of Plaintiff's speech.

**1. Forum Analysis.**

As this Court recently recognized, Plaintiff's "exercise of his First Amendment rights is not absolute." *Roy v. City of Monroe*, No. CV 16-1018, 2018 WL 4120013, at \*5 (W.D. La. Aug. 29, 2018)(Doughty, J.). Indeed, "[t]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Id.* (citing *Heffron v. International Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981)). Simply because property is "public," in that it is owned or controlled by the government, does not mean that the First Amendment guarantees unfettered access to speak on the property. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 46, 103 S. Ct. 948. Government can validly restrict speech on its property, and "[t]he existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue" for First Amendment purposes. *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 344 (5th Cir. 2001).

---

[4] Plaintiff's Amended Complaint also references the Fourteenth Amendment; it is clear, however, that Plaintiff is not asserting a cause of action arising under the Fourteenth Amendment but, rather, relies upon it to apply the First Amendment to Defendants. *See* Rec. Doc. 17 at ¶ 60 ("Hershey suffers and will continue to suffer irreparable harm by Defendants' interference with the exercise of his First Amendment rights as applied to the states by the Fourteenth Amendment.").

The courts have recognized four classes of forums for First Amendment claims: (1) traditional public forum; (2) public forum created by governmental designation; and (3) nonpublic forum. *See id.* The level of scrutiny applied on judicial review of restrictions on speech depends upon the classification of the forum at issue. *See id.*

Traditional public forums are places that "by long tradition or by government fiat have been devoted to assembly or debate" such as streets and parks which have been historically used for assembly and public communication purposes. *Id.* (quotations and citations omitted). Regulations on speech in these areas are subject to the strict scrutiny standard on judicial review. *Id.* at 345.

Next, a public forum created by governmental designation ("designated public forum") is "a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Id.* These areas are distinguished from traditional public fora in that they are places not historically devoted to assembly or debate, but have been intentionally opened by government for public discourse. *See id.* Regulations on speech in designated public fora are also subject to the strict scrutiny standard on judicial review.

Third, a "limited" forum is a space "opened for public expression of particular kinds or by particular groups." *Id.* at 346. Fourth, a nonpublic forum is "[p]ublic property that is not by tradition or designation open for public communication." *Id.* at 347. In both "limited" and nonpublic forums, governments may regulate access so long as the regulations are content-neutral and reasonable in light of the purpose served by the forum. *See id.*

> **a. Plaintiff has not established that he was leafletting in either a traditional public forum or designated public forum.**

Plaintiff's claims rest—largely if not entirely—on the premise that the area in which he was leafletting on February 28, 2020 is a traditional public forum or, alternatively, a designated public forum. [Rec. Doc. 17 at ¶¶ 52-53]. By characterizing the area in question in this fashion, Plaintiff hopes to exploit the heightened scrutiny applied to regulations on speech in such places.

His Amended Complaint, however, provides little to no factual content supporting the conclusion that the sidewalks of the Center are indeed traditional public or designated public forums. *Only two* of the seventy paragraphs in the Amended Complaint are devoted to describing the area where Plaintiff leafletted:

> 21. The CenturyLink Center is situated in a public park encompassed by the boundary streets of Arthur Ray Teague Parkway, Angelle Drive, CenturyLink Center Drive, and Reeves Marine Drive which are connected to the public streets and sidewalks through the park leading to the CenturyLink Center. There is no gate or restriction on access to any of the public sidewalks and streets through the park to the CenturyLink Center.

> [. . . ]

> 25. Within the park surrounding the Center, the sidewalks, including the sidewalk where Hershey was distributing his literature, streets, staircases, grassy areas, and parking lots were all open to the public.

[Rec. Doc. 17]. Essentially, all Plaintiff has done is: (1) allege that he was on open "public property" *id.* at ¶ 58, and (2) describe the physical characteristics of the area in question. Respectfully, these scant allegations do not come close to establishing that Plaintiff was expressing himself in a public or designated forum.

First, simply because property is open to the public does not make it a traditional public forum. "Publicly owned or operated property does not become a 'public forum' simply because members of the public are permitted to come and go at will." *United States v. Grace*, 461 U.S. 171, 177, 103 S. Ct. 1702, 1707 (1983). After all, the government, "no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated." *Id.*

Second, Plaintiff's physical description of the area does not, standing alone, establish that the place he was leafletting in was a public forum. "The mere physical characteristics of the property cannot dictate forum analysis." *United States v. Kokinda*, 497 U.S. 720, 727, 110 S. Ct.

6

3115, 3120 (1990). [5] Much more factual information is needed to establish that public property at issue is a space for dialogue and debate, such as: the traditional use of the property, the objective use and purposes of the space, and the government intent and policy with respect to the property must also be considered. *See e.g., Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 805, 105 S. Ct. 3439, 3450 (1985).

A complaint alleging violation of the right to free expression that does not set forth facts showing that the historical use and purpose of the property indicates public discourse and debate, or that government has intentionally "opened up" open space for such dialogue and debate fails to state a claim based on the property in question's status as a traditional public forum, or designated forum, respectively.[6] Perhaps the best example is **Plaintiff's own defeat in federal court for failing to allege these types of facts**:

> Second, Hershey has not sufficiently alleged that Lehman's campus was "intentionally opened" to all types of expressive activity or for 'indiscriminate use[s] by the general public,' prerequisites to establishing a designated public forum.

*See Hershey v. Goldstein*, 938 F. Supp. 2d 491, 509 (S.D.N.Y. 2013)

Applying the above-cited authorities to the Amended Complaint, Plaintiff has not alleged any facts showing that the sidewalk or "grassy area" adjacent to the Center is a place traditionally used for public expression. Indeed, Hershey fails to allege that these areas have *ever* been used for public discourse in the past. Nor has he sufficiently alleged that the government, Bossier City,

---

[5] Thus, for example, sidewalks are always not everywhere public forums. *See id.* ("The postal sidewalk at issue does not have the characteristics of public sidewalks traditionally open to expressive activity.").

[6] *See e.g. Kuerbitz v. Meisner*, No. 16-12736, 2017 WL 4161111, at *8 (E.D. Mich. Sept. 20, 2017), *aff'd,* No. 17-2284, 2018 WL 5310762 (6th Cir. July 11, 2018)(("Plaintiff's complaint fails to set forth sufficient facts to support a reasonable inference that the auction occurred at a place that by long tradition or by government declaration had been devoted to assembly and debate, or a place that the government "opened up" for such a purpose."); *Agema v. City of Allegan*, 826 F.3d 326, 336 (6th Cir. 2016)(Merrit, J., concurring)("The plaintiffs argue that the school space at issue here is a designated public forum, but their complaint altogether fails to allege any facts indicating that the school space they rented was open to "indiscriminate use" or "unfettered access."); *Vukadinovich v. Bd. of Sch. Trustees of Michigan City Area Sch.*, 978 F.2d 403, 409 (7th Cir. 1992)("Here, Vukadinovich fails to allege that any governmental body or authority made Rogers High School a public forum.").

intentionally opened that space for expressive activity.[7] Therefore, Plaintiff has failed to state that the area in which he was leafletting on February 28, 2020 was either a traditional public or designated public forum.

### b. Property adjacent to sports and event arena spaces are limited or nonpublic forums during events.

The weight of the cases hold that event arenas like the Center, and particularly areas used from ingress thereto and egress therefrom are nonpublic or limited forums. *See e.g.*, *Ball v. City of Lincoln, Nebraska*, 870 F.3d 722, 736 (8th Cir. 2017)(plaza area outside Pinnacle Bank Arena in Lincoln, Nebraska, was nonpublic forum); *Pomicter v. Luzerne Cty. Convention Ctr. Auth.*, 939 F.3d 534, 537 (3d Cir. 2019)(concourse outside Mohegan Sun Arena in Wilkes-Barre, Pennsylvania, was nonpublic forum); *Calash v. City of Bridgeport*, 788 F.2d 80, 83 (2d Cir. 1986)(Kennedy Stadium in Bridgeport, Connecticut, was either nonpublic or limited forum). Such spaces are traditionally used and intended to "facilitate the safe and efficient movement of" arena patrons, rather than as a forum for open debate and discussion. *See Ball*, 870 F.3d at 736.[8]

**Notably, Plaintiff recently lost a case on this very issue**, *Hershey v. Multi-Purpose Civic Ctr. Facility Bd. for Pulaski Cty., Arkansas*, No. 4:18-CV-00476 BSM, 2020 WL 4741900 (E.D. Ark. Aug. 14, 2020). There, Hershey attempted to leaflet during or before the same "Winter Jam" concert tour at issue in this case. The court in that case granted summary judgment against Hershey,

---

[7] Plaintiff's allegation that the sidewalk of the Center is a traditional public forum is legal conclusion that this Court should ignore on consideration of this Motion. *See McTernan v. City of York, Penn.*, 577 F.3d 521, 531 (3d Cir. 2009)("Plaintiffs argue that the District Court was required to accept the statement in the complaint that the ramp at issue was a public forum. We disagree. That allegation in the complaint was a legal conclusion, which the District Court need not accept in ruling on a motion to dismiss.").

[8] S*ee also* Kaitlin Shire, You Can't Sit with Us: Limiting Free Speech in Sports Arenas and How the Tampa Bay Lightning Took Home Ice Advantage Too Far, 24 Jeffrey S. Moorad Sports L.J. 81, 96 (2017)("A sports arena is not a traditional public forum, such as a park, that has been customarily reserved for assembly and debate… Rather, the primary purpose of the arena is to provide a forum for teams to play and fans to watch").

holding that the sidewalks adjacent to the Verizon Center in Little Rock, Arkansas, constituted nonpublic and limited public forums.

Therefore, the premise of Plaintiff's Amended Complaint—that the Center was a traditional public or designated forum—is deficient not only because Plaintiff failed to sufficiently plead facts establishing it as such, but also considering the numerous authorities holding that such spaces are limited or nonpublic forums.

**c. Because Plaintiff's claims rely on the premise that he was excluded from a traditional public or designated forum, he failed to state a First Amendment claim.**

Plaintiff's claims hinge on his allegation that the area in which he was leafletting adjacent to the Center is a traditional or designated public forum. Yet, as demonstrated above, Plaintiff has failed to substantiate those allegations. Therefore, he has failed to state a claim upon which relief may be granted. *See McTernan v. City of York, Penn.,* 577 F.3d 521, 531 (3d Cir. 2009)("Plaintiffs' allegations in the complaint of infringement of their First Amendment rights are viable only if the ramp is a public forum. [. . .] If Plaintiffs were not excluded from a public forum, they have failed 'to state a [First Amendment] claim to relief that is plausible on its face.' *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955)").[9] Therefore, the Court's analysis should end here, and Plaintiff's claims should be dismissed.

**d. Even under the framework for reviewing restrictions on speech in limited or nonpublic forums, Plaintiff has not alleged that barring him from leafletting was unreasonable or discriminatory based on the content of his speech.**

Even should the Court continue on with its analysis by examining Plaintiff's claims under the framework for limited or nonpublic forums, the result is the same—Plaintiff's claims are subject

---

[9] *See also Boyd v. City of Hermosa Beach*, No. CV0410528AGJTLX, 2007 WL 9717630, at *8 (C.D. Cal. Sept. 11, 2007)(granting summary judgment for defendant based on finding property at issue to be nonpublic forum where "[p]laintiffs' theory of First Amendment violation thus hinges on a characterization of the Hermosa Beach Police Station as a public forum.").

9

to dismissal for failing to state a claim upon which relief can be granted. Restrictions on speech in such forums need only be content-neutral and reasonable, *Chiu*, 260 F.3d at 347, and Hershey has not alleged facts showing that Bossier City Defendants' restricting him from leafletting near the Center on February 28, 2020 was unreasonable or motivated by a desire to discriminate against Hershey's viewpoint.

Reasonableness in this context is to "be assessed in light of the purpose of the forum and all the surrounding circumstances." *Cornelius*, 473 U.S. at 809. Moreover, the restriction "need not be the most reasonable or the only reasonable limitation." *Id.* (internal quotation marks omitted). And, for restrictions on speech in limited public fora, the government implicitly has "the right to make distinctions in access on the basis of . . . speaker identity." *Perry*, 460 U.S. at 49. Thus, a speaker may be excluded from a limited public forum "if he is not a member of the class of speakers for whose especial benefit the forum was created." *Cornelius*, 473 U.S. at 806.

Courts have recognized that restrictions on leafletting activity outside sporting/event arenas are reasonable in light of the nature of those arenas and in order to ensure safe and efficient access of patrons to the arenas:

> The Policy in this case is designed to address some of the same concerns, namely to prevent interference with Arena Tenants' contractual uses of the Plaza Area and to facilitate safe and efficient access to the Arena for patrons of the venue. The Plaza Area, which is specifically included in the premises leased by Arena Tenants, is used by Tenants for commercial purposes. Restricting expressive activity in the Plaza Area is a reasonable manner of addressing those concerns and of furthering those purposes. Although Ball was at all times peaceful and respectful while leafletting, permitting such conduct within the Plaza Area amid large crowds of people intent on entering the Arena before or exiting the Arena after an event could result in an impediment to the flow of traffic and thus endanger the safety of Arena patrons. Viewed in light of the commercial and safety purposes served by the Plaza Area, the expressive activity Ball seeks to engage in would be disruptive of the normal activities within the Plaza Area.

10

*Ball*, 870 F.3d at 737.[10] **Hershey lost on this very issue in the Little Rock, Arkansas case**.[11] Here, Hershey's Amended Complaint sets forth facts showing why his exclusion from leafletting on the day and at the place in question was unreasonable; thus, he has failed to state a claim based on the unreasonableness of his exclusion from the Center grounds.

The Amended Complaint likewise fails to establish that Bossier City Defendants discriminated against Hershey based on his viewpoint. Viewpoint discrimination occurs when a government targets "particular views taken by speakers on a subject." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829, 115 S. Ct. 2510, 2516 (1995). While Hershey alleges that Bossier City has a content and viewpoint discriminatory policy [Rec. Doc. 17 at ¶ 59(d)], he provides no factual support for that bald assertion. Nor does he allege the predicate facts necessary to establish that *he himself* was discriminated against based on his message. Hershey does not, for instance, allege that he showed the officers his leaflet, told the officers the name of the organization with which he was associated, or informed them as to the nature of his cause. That Bossier City Defendants targeted Hershey for his views is, therefore, logically impossible, where Hershey has not alleged that Bossier City Defendants knew Hershey's views.

Based on the above, Hershey failed to state a claim for violation of his First Amendment right of free expression because he did not show by factual allegations that (1) he was speaking in a public or designated public forum; and (2) his exclusion was unreasonable and motivated by

---

[10] *See also Int'l Soc. for Krishna Consciousness, Inc. v. New Jersey Sports & Exposition Auth.*, 691 F.2d 155, 163 (3d Cir. 1982)(holding policy restricting leafletting and solicitation in the Meadowlands sports complex was a reasonable restriction in a nonpublic forum, given that the prohibited expressive activity could have adverse effects on concessionaire business, subject patrons to unwanted intrusion, and impede crowd movement); *Pomicter,* 939 F.3d 534, 545 (3d Cir. 2019)(policy restricting leafletting outside 10,000-seat arena reasonable given risk of disruption to arena business).

[11] *See* 2020 WL 4741900, at *3 ("The policy is reasonable, as it serves to facilitate safe access to the arena during events, which necessarily includes the sidewalks adjacent to the arena.")

11

viewpoint discrimination. As such, this Motion should be granted and Hershey's claims against Bossier City Defendants dismissed.

**C.**      **Plaintiff failed to state a *Monell* claim against Bossier City.**

The Court should grant this Motion and dismiss Hershey's *Monell* claims against Bossier City because has not pleaded facts showing that Bossier City had in force and effect a policy or custom that was the moving force driving a constitutional right violation.

Municipalities are not vicariously liable under Section 1983 for conduct of their agents. *See Connick v. Thompson,* 563 U.S. 51, 60, 131 S. Ct. 1350, 1359 (2011). Under *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S. Ct. 2018, (1978), a municipality may be liable only if its official policy or custom is the "moving force" behind the plaintiff's alleged constitutional right violation. *See Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir.2003) (citations omitted).

To succeed on a *Monell* claim against a local government entity, then, Plaintiff must establish three elements: (1) an official policy or custom; (2) of which a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom. *See Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). Proving these elements is "necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Fifth Circuit "precedents [have made] clear that the *Twombly* standard applies to municipal liability claims." *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 284 (5th Cir. 2020)(collecting cases). To state a claim for relief against a municipality under *Monell*, then, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be

12

conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't,* 130 F.3d 162, 167 (5th Cir. 1997)(citing *Fraire v. Arlington,* 957 F.2d 1268, 1277 (5th Cir. 1992)).

### 1. No official policy.

Plaintiff's allegations against Bossier City in his Amended Complaint fail because he has failed to plead the existence of a harm-inducing official policy or custom. The below are all of Plaintiff's Complaint allegations in this regard:

20.    Defendant the City has a long-standing custom of allowing police officers, employees and/or officials of CenturyLink Center to use their unfettered discretion to arbitrarily and capriciously remove individuals who are peacefully exercising their First Amendment rights from the CenturyLink property.

[. . .]

55.    At all relevant times, Defendant the City did not have any official or unofficial viewpoint neutral policy regulating speech activities protected by the First Amendment to the United States Constitution and restricting access to the CenturyLink Center public sidewalks in the park in which the CenturyLink Center is located.

56.    Defendant City's custom or policy of requiring prior approval of a leaflet prior restraint on speech and, therefore, bears a "heavy presumption of unconstitutionality." Chiu v. Plano Independent School Dist., 339 F.3d 273, 280-81 (5th Cir. 2003).

57.    Defendant City's custom or policy of requiring prior approval of a leaflet before the leafleteer is allowed to distribute it on the CenturyLink property is facially unconstitutional because it is over-broad in that it does not provide for "specified brief period" of time within which the CenturyLink Center official shall approve or deny the request to distribute the leaflet on the CenturyLink Center property, and because it does not provide for expeditious judicial review, and that it does not provide that the censor bear the burden of going to court to suppress the speech. Freedman v. State of Md., 380 U.S. 51, 58-59 (1965).

58.    Defendant City's failure to have a policy, or by acquiescence in the arbitrary and capricious denial of citizens' First Amendment rights by the CenturyLink Center officials, or by failing to train its police officers, employees and officials that the Bossier City Arena, aka CenturyLink Center, is public property and a traditional public forum, has created an unconstitutional custom by the City of Bossier City, Louisiana. That unconstitutional custom or policy was the moving force behind the security

13

officers of CenturyLink Center, police officers of the City, and Deputy Marshal of the City's, interference with Hershey's exercise of his First Amendment rights on the CenturyLink Center outdoor grounds.

59.    Defendant City's policy or custom as applied to Hershey is unlawful in at least the following ways:

    a.    It restricts more speech than necessary to achieve a significant government interest.
    b.    It restricts more speech than necessary to achieve a reasonable government interest.
    c.    It allows arbitrary and capricious enforcement.
    d.    It is based on content and viewpoint discrimination.
    e.    It utilizes prior restraint.
    f.    It preferentially allows commercial speech while prohibiting noncommercial speech.
    g.    It is not narrowly tailored to achieve a compelling, significant or legitimate government interest.
    h.    It provides no alternate channels for speech.

[. . .]

70.    The lack of training was so great and so inadequate and the risk of constitutional harm was so obvious by the failure to train the delineation between public and private property, that it became an unconstitutional custom or policy of the City and was the moving force behind, the but for cause of, and the proximate cause of Hershey's removal from the property on February 28, 2020.

[Rec. Doc. 17]. These allegations fail to state a claim for municipal liability under Rule of Civil Procedure 8, *Twombly, Monell*, and the cases following *Monell*.

As stated, municipal liability under Section 1983 requires proof of an "official policy." An "official policy" is, in the first instance, "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). Here, the Amended Complaint failed to identify any *written* offending policy. Instead, Plaintiff merely states, in completely conclusory fashion, that a policy exists and then alleges its (boilerplate) shortcomings. However, Plaintiff provides wholly inadequate factual support for either the existence of the policy or its shortcomings.

14

### 2. No custom.

Plaintiff also alleges that Bossier City maintained a custom of rights violations [Rec. Doc. 17 at ¶¶ 20, 56-58], but his allegations fall well short of the pleading standard required by Fifth Circuit precedent.

"Official policy," as defined by *Monell*'s progeny includes not only a written policy but also "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* A pattern amounts to official policy when it is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850–51 (5th Cir. 2009)(quoting *Webster,* 735 F.2d at 841). "Where prior incidents are used to prove a pattern, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Id.* Thus, Plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case." *Id.* (citing *Piotrowski,* 237 F.3d at 582). A pattern requires similarity and specificity; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Id.*

Here, Plaintiff alleges no widespread pattern of abuses by Bossier City Defendants—none. Instead, he relies on only one instance, his own case. However, municipal liability cannot, "as a matter of law, be derived from a single incident . . ." *Rodriguez v. Avita*, 871 F.2d 552, 554 (5th Cir. 1989). Indeed, the Fifth Circuit has consistently held that single instances cannot support a finding of a policy or custom necessary for *Monell* claims. *See Fontenot v. City of Houston*, 647 F. App'x 402, 406 (5th Cir. 2016)(citing *Piotrowski v. City of Houston,* 237 F.3d 567, 581 (5th Cir.2001)). Plaintiff's allegation that the supposed Bossier City custom is "long-standing" [Rec.

15

Doc. 17 at ¶ 20)] is nothing more than a formulaic recitation of the elements of his claim.[12] Such allegations are to be disregarded for purposes of this Motion under the *Twombly/Iqbal* standard and, in any event, are not sufficient to establish a cause of action.

### 3.  No knowledge of a policymaker.

Plaintiff's claims against Bossier City are also subject to dismissal due to Plaintiff's failure to plead the second element of his *Monell* claim, "a policymaker [who] can be charged with actual or constructive knowledge." *Valle*, 613 F.3d at 542. His Amended Complaint does not identify a policymaker, let alone lay out facts showing that that person knew of or implemented the alleged policy at issue.

Hershey relies exclusively on statements made by Defendant Tyshon Harvey as the sole support for the existence of a Bossier City policy requiring pre-approval of leaflet materials. [Rec. Doc. 17 at ¶¶ 45-47]. However, Defendant Tyshon Harvey is alleged to be a CenturyLink employee—not Bossier City employee, let alone a policymaker for Bossier City. [*Id.* at ¶ 9]. "Only those possessing final policy making authority represent official policy." *Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 105 (1989). As Hershey has not alleged statements— or any facts—made by a Bossier City final policymaker, he likewise has not established the second element of his *Monell* claim.

### 4.  No constitutional right violation.

The Fifth Circuit has "stated time and again that [w]ithout an underlying constitutional violation, an essential element of municipal liability is missing." *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys,* 675 F.3d 849, 867 (5th Cir. 2012)(quotations and citations omitted). In other words, "there can be no § 1983 liability [under *Monell*] unless [plaintiff] suffered a

---

[12] *See e.g. Mitchell v. Gautreaux*, No. CV 16-722-SDD-EWD, 2017 WL 2346839, at *9 (M.D. La. May 30, 2017)(finding allegation that sheriff's office had "long-standing policy and/or practice of failing to properly discipline, train, and supervise his deputies and placing deputies in the field unsupervised" conclusory).

constitutional violation." *Id.* In this instance, Bossier City Defendants have shown in Section B, *supra,* that Plaintiff has not suffered a constitutional violation. Accordingly, for this reason alone, his *Monell* claim against Bossier City must be dismissed.

### 5. No 'moving force.'

Plaintiff's *Monell* claim is also subject to dismissal because he has not alleged that Bossier City's (supposed) harmful policy or custom was the "moving force" behind the (supposed) constitutional violation. To meet this requirement, Plaintiff must show that the policy or custom "was a cause in fact of the deprivation of rights inflicted." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Id.*

Here again, Plaintiff has not pled *any* facts demonstrating how Bossier City's offending policy (assuming one exists) caused his rights to be violated. Instead, Plaintiff merely alleges, without supporting facts, that Bossier City's "unconstitutional policy of custom was the moving force" and "the but for cause of" Hershey's rights violation. [Rec. Doc. 17 at ¶¶ 58, 70]. These types of vague, conclusory allegations are inadequate. *See id.* (finding plaintiff's allegation that city's policies "led to" rights violations conclusory and inadequate to show the 'moving force' element of *Monell*).

### 6. Insufficiently pled training allegations.

Plaintiff also alleges that Bossier City created the supposedly-wrongful custom by failing to train its officers. [Rec. Doc. 17 at ¶ 58, 67-70]. To defeat a motion to dismiss, Plaintiff must substantiate the following elements on a failure-to-train claim: (1) the training procedures of the Bossier City's policymaker were inadequate, (2) Bossier City's policymaker was deliberately indifferent in adopting the training policy, and (3) the inadequate hiring or training policy directly

17

caused Plaintiff's injury. *See Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996). "[F]or liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).

Plaintiff's Amended Complaint allegations fail on each count. There are no factual assertions outlining inadequacies in Bossier City's training regimen, that a Bossier City policymaker was deliberately indifferent, or that the training caused the relevant injury. Yet again, Plaintiff's Amended Complaint consists of nothing more than conclusory allegations, totally lacking any specificity, which this Court should not consider when weighing this Motion.

**D.     Deputy Marshal Gilbert and Officer Stoll are Entitled to Qualified Immunity.**

Deputy Marshal Gilbert and Officer Stoll are qualifiedly immune from suit based on the claims alleged herein because Plaintiff has not established that they violated his clearly established rights. Government actors performing discretionary functions "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 308 (2015)(internal quotation omitted).

To defeat qualified immunity, Plaintiff must show: (1) "a violation of an actual constitutional right," and (2) that "the right was clearly established at the time of violation." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016). This Court can decide one question or both. *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808 (2009).

18

Plaintiff bears the burden of overcoming qualified immunity. "The Fifth Circuit does not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir.1992).

"[Q]ualified immunity questions should be resolved at the earliest possible stage in litigation, usually before discovery." *Randle v. Lockwood*, 666 F. App'x 333, 335–36 (5th Cir. 2016)(citations omitted). Resolving qualified immunity as early as possible "serves to protect officials not only from unwarranted liability but also from costly, time-consuming, and intrusive pre-trial discovery." *Id.*

### 1. Element 1:   No actual constitutional right violation.

Because Hershey failed to state a violation of an actual constitutional right, the court's qualified immunity analysis "ends" and Deputy Marshal Gilbert and Officer Stoll are entitled to qualified immunity. *See Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). For the reasons discussed *supra*, (Section B), Plaintiff has failed to state any constitutional right violation committed by either Deputy Marshal Gilbert or Officer Stoll. Accordingly, and for this reason alone, Deputy Marshal Gilbert and Officer Stoll are entitled to dismissal from this action on grounds of qualified immunity.

### 2. Element 2:   No clearly established right.

Assuming without admitting, and solely for the purpose of this Motion, that Plaintiff had shown a violation of an actual constitutional right, Deputy Marshal Gilbert and Officer Stoll are nevertheless entitled to qualified immunity because Plaintiff cannot overcome the second qualified immunity hurdle—proving that the right was clearly established at the time of the violation.

A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd,* 563 U.S. 731,

19

741, 131 S. Ct. 2074, 2083 (2011)(emphasis added, internal quotations omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). Qualified immunity should be recognized unless "existing precedent . . . placed the statutory or constitutional question **beyond debate**." *Ashcroft,* 563 U.S. at 741 (emphasis added).

Recently, in *Morrow v. Meachum*, 917 F.3d 870 (5th Cir. 2019), the Fifth Circuit set forth four "commandments" for distilling whether a plaintiff has raised a constitutional question beyond debate. Three of them are relevant here. First, the constitutional issue must be framed "with specificity and granularity." *Id.* at 874-875. Second, "clearly established law comes from holdings, not dicta." *Id.* at 875. Third, courts "must think twice before denying qualified immunity." *Id.* at 876.

### a. Plaintiff's right to leaflet on the sidewalk of the Center during events was not clearly established.

To overcome Deputy Marshal Gilbert and Officer Stoll's qualified immunity defense, Plaintiff must point to controlling authority establishing his right to leaflet near the Center on the evening in question. In the First Amendment context, showing that a right is "clearly established" is particularly difficult. "Where there is no authority recognizing an asserted right, and where the area of law is as 'abstruse' and 'complicated' as First Amendment jurisprudence, that right cannot be clearly established for the purposes of qualified immunity analysis." *Morgan v. Swanson*, 755 F.3d 757, 761 (5th Cir. 2014).

For qualified immunity in the context of the First Amendment, [t]he Court's earlier "determination of the character of the forum in which expression was regulated shapes [its] determination whether a clearly established right existed." *Chiu*, 260 F.3d at 344. Here, Plaintiff cannot point to a single case recognizing his virtually unfettered right to leaflet adjacent to an entrance to an event center, such as the Center, during events. Bossier City Defendants not aware

20

of **any authority** holding that spaces like the area around the Center are public fora. Instead, the weight of the cases hold that event arenas like the Center, and particularly areas used from ingress thereto and egress therefrom are **nonpublic** forums. *See e.g.*, discussion in Section B.1.b., *supra*. And, in limited and nonpublic forums, restrictions on speech need only be reasonable in light of the nature of the forum and content-neutral. As discussed above, (Section B.1.d.) Plaintiff has not alleged facts showing why Deputy Marshal Gilbert and Officer Stoll's preventing Plaintiff from leafletting on the sidewalk of the Center during an event was unreasonable or discriminatory based on Plaintiff's viewpoint.

Simply put, there are no facts in the Amended Complaint that would show Deputy Marshal Gilbert and Officer Stoll acted "objectively unreasonabl[y]" under the circumstances and in light of the applicable case law. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). **In a prior action, Hershey has lost on this very ground**. *Hershey v. Multi-Purpose Civic Ctr. Facility Bd. for Pulaski Cty., Arkansas*, the court held that the officer was entitled to qualified immunity because it was "objectively reasonable for [the officer] to instruct Hershey to hand out leaflets across the street." 2020 WL 4741900, at *2. In *Hershey v. Jasinski et al*, United States District Court, Western District of Missouri, St. Joseph Division, Docket No. 20-06088-CV-W-BP. Similarly, Hershey has not shown that it was objectively unreasonable for the officers to bar him from leafletting on the sidewalk of the Center during an event.

For all of these reasons, Deputy Marshal Gilbert and Officer Stoll are entitled to qualified immunity.

**E.      Plaintiff's Request for Injunctive and Declaratory Relief should be Denied.**

As shown above, Plaintiff has failed to state a claim against Bossier City Defendants under 42 U.S.C. § 1983. For those same reasons, Plaintiff has failed to show that he will prevail on the merits. Consequently, his requests for injunctive and declaratory relief should be denied and

21

dismissed. *See e.g. Aguilar v. Louisiana Dep't of Corr.*, No. 1:14-CV-3476, 2017 WL 3974961, at *4 (W.D. La. Aug. 17, 2017), *report and recommendation adopted*, No. 1:14-CV-03476, 2017 WL 3974944 (W.D. La. Sept. 6, 2017)("Since Aguilar has failed to prove a violation of his constitutional right to medical care, he has not shown he is entitled to prospective injunctive or declaratory relief against Secretary Leblanc.").

## CONCLUSION

For the reasons set forth herein, Bossier City Defendants respectfully request that this Court grant this Motion and dismiss Plaintiff's claims against them, with prejudice.

Respectfully submitted,

**WIENER WEISS & MADISON**
A Professional Corporation

By: */s/ Reid A. Jones*_____
Layne A. Clark, Jr. (#23686)
Marjorie L. Frazier (#32991)
Reid A. Jones (#34611)
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA  71120-1990
Telephone:     (318) 226-9100
Facsimile:      (318) 424-5128
Email:           lclark@wwmlaw.com
Email:           mfrazier@wwmlaw.com
Email:           rjones@wwmlaw.com

**ATTORNEYS FOR DEFENDANTS,
CITY OF BOSSIER CITY, DEPUTY
MARSHAL ROBERT GILBERT, AND
OFFICER DANIEL STOLL**

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2021, I served a copy of the above and foregoing on all counsel of record via the Court's CM/ECF filing system.

*/s/ Reid A. Jones*
Reid A. Jones

23