UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RICHARD HERSHEY                          CIVIL ACTION NO. 21-cv-460

VERSUS                                   JUDGE TERRY A. DOUGHTY

CITY OF BOSSIER CITY, ET AL              MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Richard Hershey ("Plaintiff") was distributing leaflets outside a public arena when a policeman ordered him to leave or be arrested and taken to jail. Plaintiff left. He later filed this civil rights action against the City of Bossier City, two law enforcement officers, and three security officers. He alleges that his eviction from the grounds violated his First Amendment rights. Before the court is a Motion to Dismiss (Doc. 19) filed by the City and the two law enforcement officers. The three security officers have filed a separate motion to dismiss (Doc. 28) that will be addressed later. For the reasons that follow, it is recommended that the City Defendants' motion to dismiss be granted.

### Rule 12(b)(6)

The City Defendants move for dismissal based on Fed. R. Civ. Pro. 12(b)(6). In assessing the motion, the court must accept as true all well-pleaded facts in the complaint and view those facts in the light most favorable to the plaintiff. In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). Those facts must state a claim that rises above the speculative level and is plausible on its face. Bell Atlantic Corp. v.

Twombly, 127 S.Ct. 1955, 1964-65 (2007); Amacker v. Renaissance Asset Mgmt., LLC, 657 F.3d 252, 254 (5th Cir. 2011). A complaint is not sufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 127 S.Ct. at 1965).

**The Allegations**

The relevant facts for purposes of assessing the motion to dismiss are found in Plaintiff's First Amended Complaint (Doc. 17). Plaintiff, a senior citizen from Missouri, is a vegetarian advocate whose ethical beliefs compel him to share his message with others. He is compensated by various nonprofit organizations for his advocacy and distribution of literature. First Amended Complaint, ¶¶ 4, 15-17.

A Christian rock concert known as Winter Jam was held on February 28, 2020 at a Bossier City arena that was then known as CenturyLink Center. ¶ 24. The facility has since been rebranded as Brookshire Grocery Arena. The court will refer to it as the Arena.

The Arena is situated in a public park, with no restriction on access to any of the sidewalks and streets through the park. ¶ 21. The Arena does not have any written or official policy regarding the distribution of leaflets on its grounds, and it does not have any formal application process to request permission to distribute leaflets. ¶¶ 18-19. Instead, the City has a longstanding custom of allowing police officers or officials of the Arena to use unfettered discretion to remove persons who are peacefully exercising their First Amendment rights. ¶ 20.

Plaintiff was on a public sidewalk on the grounds of the Arena and distributing free religious booklets on behalf of a nonprofit organization named the Christian Vegetarian

Association.  ¶¶ 14-15.  His activity was entirely peaceable and non-aggressive, and he did not create a disturbance or interfere with pedestrian or vehicular traffic.  ¶¶ 22-23.  Also, out of concern for safety, he did not distribute his booklets on the staircases of the Arena or in the parking lots.  ¶ 26.  At least one other person, not associated with Plaintiff, was distributing commercial advertisement cards for an internet radio station.  ¶ 27.

Plaintiff was approached by Deputy City Marshal Bobby Gilbert and Bossier City Police Officer Daniel Stoll, along with three Arena security officers.  ¶ 28.  Gilbert waved a pair of handcuffs at Plaintiff, and Stoll told Plaintiff that he had been told to leave the public park.  Plaintiff replied that no one had told him to leave.  Gilbert responded that he had bracelets for Plaintiff and would put them on Plaintiff and take him to jail.  ¶¶ 31-34.

Plaintiff attempted to explain that he had a legal right to pass out his literature, but Gilbert cut him off and told him that he was on private property and had to leave or be arrested.  Plaintiff believed that this order was unlawful but, fearing arrest, he agreed to leave.  Gilbert, after first blocking Plaintiff's egress, allowed Plaintiff to leave and told him that he would go to jail if he returned.  ¶¶ 35-43.

As Plaintiff was leaving, he asked about the radio station cards that were being distributed.  Defendant Harvey, one of the Arena security officers, said that Plaintiff's literature had not been approved by the Arena, and he had to submit his literature in advance for approval.  Harvey said he did not know if the radio station literature had been approved, but Plaintiff's literature was not approved, so he had to leave.  Plaintiff left the grounds, while the radio station leafleteer continued to hand out her commercial literature without interference from officials.  There were no alternative avenues available to Plaintiff

to hand out his literature to concert attendees.  Plaintiff, fearing arrest, has not returned to the Arena.  ¶¶ 44-51.

**Forum Analysis**

"There is no doubt that as a general matter peaceful picketing and leafleting are expressive activities involving 'speech' protected by the First Amendment." U.S. v. Grace, 103 S.Ct. 1702, 1706 (1983).  The government's ability to limit such speech activities depends in part on a forum analysis.  "There are two broad categories of forums: (1) traditional and designated public forums and (2) limited public forums and nonpublic forums." Freedom from Religion Foundation v. Abbott, 955 F.3d 417, 426 (5th Cir. 2020).

Plaintiff alleged in his complaint (¶¶ 52 & 53) that the sidewalks and grassy areas outside the Arena are a traditional public forum or, in the alternative, a designated public forum.  If Plaintiff is correct, regulations on speech in those areas are subject to strict scrutiny review.  They must be narrowly tailored to serve a compelling state interest. Freedom from Religion, 955 F.3d at 426, citing Fairchild v. Liberty ISD, 597 F.3d 747, 758 (5th Cir. 2010).  The government has more leeway to restrict speech in a limited public forum or nonpublic forum.  Id.

The City Defendants argue that Plaintiff has not alleged sufficient facts to set forth a plausible claim that the areas at issue could be a traditional public forum or designated public forum.  They argue that, because Plaintiff does not rely on any other forum theory, the claims against them must be dismissed.  The court will review the forum analysis rules and then compare them to the allegations in the complaint.

Traditional public forums are places that by long tradition or by government fiat have been devoted to assembly or debate.  Chiu v. Plano ISD, 260 F.3d 330, 344 (5th Cir. 2001).  Public places "historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.' " Grace, 103 S.Ct. at 1707.

In addition to traditional public forums, "a public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." Cornelius v. NAACP Legal Defense and Educational Fund, Inc., 105 S.Ct. 3439, 3449 (1985).  "The Constitution forbids a state to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 103 S.Ct. 948, 955 (1983). Examples of designated forums include university meeting facilities, a schoolboard meeting, and a municipal theater.  Id.

Plaintiff made the following allegations regarding the setting of his activity:

21. The CenturyLink Center is situated in a public park encompassed by the boundary streets of Arthur Ray Teague Parkway, Angelle Drive, CenturyLink Center Drive, and Reeves Marine Drive which are connected to the public streets and sidewalks through the park leading to the CenturyLink Center.  There is no gate or restriction on access to any of the public sidewalks and streets through the park to the CenturyLink Center.

*****

25. Within the park surrounding the Center, the sidewalks, including the sidewalk where Hershey was distributing his literature, streets, staircases, grassy areas, and parking lots were all open to the public.

26. Because of potential safety concerns, Hershey did not distribute his booklets on the staircases or in the parking lots.

*****

52. The sidewalks traversing the CenturyLink park grounds and the grassy areas constitute a traditional public forum for the exercise of First Amendment rights.

53. In the alternative, the sidewalks traversing the CenturyLink Center park grounds and the grassy areas constitute a designated public forum for the exercise of First Amendment rights.

54. Hershey had a right protected by the First Amendment to the United States Constitution to distribute literature on the sidewalks on the outdoor grounds of CenturyLink Center.

Plaintiff attached email correspondence as an exhibit to his amended complaint. Doc. 25. The exhibit is a part of the complaint for all purposes, Fed. R. Civ. Pro. 10(c), so it may be considered part of the complaint for purposes of a Rule 12(b)(6) motion. U.S. ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 375 (5th Cir. 2004). The exhibit includes an email from the general manager of the Arena, who explained that the Arena was owned by Bossier City and managed by a private management company. The Arena, both inside and outside, can be leased by organizations to host events. The manager wrote, "If the public would like to engage in a peaceful protests (sic) or distribution of pamphlets, they are free to do so as long as it does not interfere with the safe ingress or egress of guests."

Defendants argue that the complaint lacks sufficient factual detail to make the case that the forum at issue is a traditional or designated public forum. Only the sidewalks outside the arena are at issue, and Plaintiff has alleged that they are part of a public park.

The Supreme Court said in Grace that sidewalks and parks are considered, without more, to be public forums. Grace, 103 S.Ct. at 1707. But some sidewalks and similar areas have, in particular cases, been held to not be part of a public forum. U.S. v. Kokinda, 110 S.Ct. 3115 (1990) (sidewalk that led only from parking area to front door of post office was not a traditional public forum sidewalk).

Defendants cite decisions in which certain areas outside public arenas were held to be either nonpublic or limited forums. See, e.g., Ball v. City of Lincoln, Nebraska, 870 F.3d 722, 736 (8th Cir. 2017) (plaza area outside Pinnacle Bank Arena was nonpublic forum); Pomicter v. Luzerne Cty. Convention Ctr. Auth., 939 F.3d 534, 537 (3d Cir. 2019) (concourse outside Mohegan Sun Arena was nonpublic forum); Calash v. City of Bridgeport, 788 F.2d 80, 83 (2d Cir. 1986) (Kennedy Stadium was either nonpublic or limited forum). None of those decisions, however, were made in a Rule 12(b)(6) setting. Ball was decided on summary judgment, and Pomicter was decided after a bench trial. The appellate court in Pomicter noted that the nature of the forum is a "highly fact-specific" issue. Calash was decided after a hearing on a motion for preliminary injunction, and it involved the entire stadium rather than an outdoor area such as a sidewalk.

Defendants also point to Hershey v. Multi-Purpose Civic Center Facility Board for Pulaski County, 2020 WL 4741900 (E.D. Ark. 2020). The court there held that sidewalks adjacent to an arena where this plaintiff sought to leaflet were a limited public forum during arena events. But that decision was made based on a motion for summary judgment, and the record included photographs and detailed information about the layout and features of

the property.  This motion must be decided solely on the allegations in the complaint and its exhibits.

In Plaintiff's favor is <u>Brister v. Faulkner</u>, 214 F.3d 675 (5th Cir. 2000), which recognized an area outside a sports arena as a traditional public forum.  <u>Brister</u> affirmed a decision, made after a trial, that a gravel area between the sidewalk and the entrance of the University of Texas' Erwin Center was a traditional public forum.  The plaintiff in that case was also distributing leaflets and was told by a police officer that he was in violation of policy.

Plaintiff's mere legal conclusions that the sidewalks are a traditional or designated public forum would not suffice.  But Plaintiff has also alleged facts regarding the surrounding area and the nature of its use.  Those additional facts give rise to at least a plausible basis for a claim that the sidewalks in a park area could be a traditional or designated public forum, such as in <u>Grace</u> and <u>Brister</u>.  Plaintiff needs to allege a plausible case, but he need not allege every specific fact needed to prevail on the merits.  For example, a plaintiff in an employment discrimination suit does not have to allege specific facts establishing each element of a prima facie case of discrimination.  <u>Swierkiewicz v. Sorema N.A.</u>, 122 S.Ct. 992 (2002).  Defendants might be able to present evidence, either on a motion for summary judgment or at a trial, that would undermine the allegations in the complaint or provide additional information that would defeat Plaintiff's claims on this issue.  But Plaintiff has alleged sufficient facts to withstand Rule 12(b)(6) review on the forum challenge.

**Reasonable Regulation; Viewpoint Discrimination**

The government is strictly limited in its ability to regulate private speech in a traditional public forum such as a park or sidewalk.  Reasonable time, place, and manner restrictions are allowed, but any restriction based on the content of the speech must satisfy strict scrutiny.  That is, the restriction must be narrowly tailored to serve a compelling government interest, and restrictions based on viewpoint are prohibited.  Pleasant Grove City, Utah v. Summum, 129 S.Ct. 1125, 1132 (2009).

Defendants argue that Plaintiff has not alleged facts to establish that he was subjected to an unreasonable regulation on speech.  Their argument refers to decisions that have approved certain restrictions on leafleting activity outside arenas.  In this case, however, there is no allegation that Bossier City had any particular regulation or restriction in place.  To the contrary, Plaintiff alleged that the Arena "does not have any written or official policy prohibiting, regulating or licensing the distribution of leaflets on its grounds." ¶ 19.  It does not have any formal application process for requesting permission to distribute leaflets (¶ 18), and the City employs a longstanding custom of allowing police officers and other officials "to use their unfettered discretion to arbitrarily and capriciously remove individuals who are peacefully exercising their First Amendment rights" on the property.  ¶ 20.  One of the security officers present when Plaintiff was ordered to leave the property allegedly referred to a policy that required prior approval of literature before it could be distributed on the property.  But the general manager of the Arena later wrote that a member of the public is free to distribute pamphlets so long as they do not interfere with the safe ingress or egress of guests.

Plaintiff alleges that the City requires prior approval of literature passed out near the Arena.  When a regulation requires prior approval but contains no limit on the scope of discretion of the decisionmaker, the regulation is subject to being struck down for vesting unbridled discretion in a government official to engage in content or viewpoint censorship. Lakewood v. Plain Dealer Publishing Co., 108 S.Ct. 2138, 2144 (1988).  See also Freedom from Religion Foundation, 955 F.3d at 427-28 (discussing the unbridled discretion doctrine and noting that circuit courts have applied in even in limited and nonpublic forums).  There are other characteristics of approval-policies that must also be examined to determine whether they satisfy the First Amendment.  No other facts are known about this alleged policy, so it cannot be analyzed for reasonableness at this stage of the case.

Plaintiff has also alleged that the City allows officers on the grounds of the Arena to use unfettered discretion, which could lead to viewpoint discrimination. The facts alleged allow a reasonable inference the officer who removed Plaintiff engaged in viewpoint discrimination.  Plaintiff alleged that there were two persons passing out leaflets, the officer was aware of both of them, and he ordered Plaintiff to leave while taking no action with respect to the other person.  These allegations allow a reasonable inference that the officer engaged in viewpoint discrimination based on the nature of Plaintiff's literature, compared to the radio station promotion passed out by the other person.  A policy that permits "communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship," and "[t]his danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official."  City of Lakewood, 108 S.Ct. at 2147.

There is a lack of clarity regarding any applicable prior-approval policy or regulation at the Arena, but there is an allegation that any regulation that exists allows unbridled discretion of the approving official. The facts allow a reasonable inference that the police officer on the scene engaged in viewpoint discrimination. Given these considerations, Defendants have not demonstrated that they are entitled to dismiss Plaintiff's complaint for lack of satisfaction of this element of his claim.

**Qualified Immunity; Gilbert & Stoll**

Deputy Marshal Gilbert and Police Officer Stoll argue that they are entitled to qualified immunity from the damages claims against them. Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 107 S.Ct. 3034, 3038 (1987). The plaintiff must show that the officer's alleged conduct violated a federal right and that the right in question was clearly established at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his conduct. The officer is entitled to qualified immunity if there is no violation, or if the conduct did not violate a law clearly established at the time. Cole v. Carson, 935 F.3d 444, 451 (5th Cir. 2019).

"Once a defendant properly invokes the defense of qualified immunity, the plaintiff bears the burden of proving that the defendant is not entitled to the doctrine's protection." Howell v. Town of Ball, 827 F.3d 515, 525 (5th Cir. 2016). "A plaintiff does not overcome the qualified immunity defense by alleging the violation of a right that is only defined 'at a high level of generality.'" Morgan v. Swanson, 755 F.3d 757, 760 (5th Cir. 2014),

quoting Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2084 (2011). "Instead, there must exist a clearly established 'particular right' such that the official had 'fair notice' of that right and its concomitant legal obligations." Morgan, 755 F.3d at 760. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. Id.

To say that an officer's conduct was proscribed by clearly established law at the time of the incident, the court "must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." Shumpert v. City of Tupelo, 905 F.3d 310, 320 (5th Cir. 2018), quoting Morgan v. Swanson, 659 F.3d 359, 371-372 (5th Cir. 2011) (en banc). In determining what constitutes clearly established law, the Fifth Circuit looks to Supreme Court precedent and then to its own precedent. Shumpert, 905 F.3d at 320. If there is no directly controlling authority, the court may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority. Id. "For conduct to be objectively unreasonable in light of clearly established law, there need not be a case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Tucker v. City of Shreveport, 998 F.3d 165, 173-74 (5th Cir. 2021), quoting White v. Pauly, 137 S.Ct. 548, 551 (2017).

Officers Gilbert and Stoll challenged Plaintiff to point to authority that clearly established his right, as of February 28, 2020, to hand out leaflets on the sidewalks outside the Arena during an event. Plaintiff responded that leafleting on matters of public concern is protected by the First Amendment. That general principle may be true, and "peaceful

pamphleteering "is not fundamentally different from the function of a newspaper.'" <u>City of Lakewood</u>, 108 S.Ct. at 2146. But protected speech in a public forum may still be subject to reasonable time, place, and manner regulations as long as the restrictions are content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. <u>Grace</u>, 103 S.Ct. at 1707.

Plaintiff does not point to a single decision from any court that has held, before or after the date of this incident, that an officer violated the rights of a leafleteer who was removed from a similar arena premises. The discussions above demonstrate that there are many nuances to First Amendment claims of this nature, beginning with questions about the category of the forum and continuing through the reasonableness of various regulations or restrictions. Very little about this field of law is clearly established.

The lack of clarity and its relationship to qualified immunity is demonstrated by the <u>Morgan v. Swanson</u> en banc decision. The Court afforded qualified immunity to a principal who interfered with a third-grader's attempt to distribute religious gifts at a school winter party. Immunity was appropriate because the relevant First Amendment law was too complex for the principal to have known how to handle the situation. Immunity was warranted "because the general state of the law in this area is abstruse, complicated, and subject to great debate among jurists." <u>Id</u>., 659 F.3d 359.

The third-grader's parent later argued that his own rights were violated when he was not allowed to distribute religious material to consenting adults in the classroom. The plaintiff-parent argued that his right to distribute religious materials was clearly established because, regardless of forum, viewpoint discrimination was unconstitutional. The Fifth

Circuit accepted that the assertion was generally true, but it again afforded the principal qualified immunity. The Court noted that it had already rejected the viewpoint discrimination principle as "far too general" to have clearly established the law for the particular setting, and the plaintiff's counsel could not name a single case that clearly established his right to distribute the gifts at school. Morgan v. Swanson, 755 F.3d 757 (5th Cir. 2014).

The Morgan decisions demonstrate the difficult burden on a First Amendment plaintiff to point to clearly established law, in an area of the law that is often unsettled or highly fact-specific, that recognizes a right in a particular setting and context. Plaintiff relies solely upon general statements of law concerning the First Amendment. He has not pointed to any controlling authority or other clearly established law that would have made clear to Gilbert and Stoll, beyond debate, that their prohibition of distributing leaflets on the sidewalks outside the Arena during a concert event was unconstitutional. Both officers are entitled to dismissal based on qualified immunity.

**Monell Liability of Bossier City**

**A. Introduction**

A municipality is not entitled to qualified immunity based on the good faith of its officers. Owen v. City of Independence, 100 S.Ct. 1398, 1409 (1980). It is also not subject to Section 1983 liability based on respondeat superior. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury

that the government as an entity is responsible under § 1983." Monell v. Department of Social Services, 98 S.Ct. 2018, 2037-38 (1978).

Plaintiff argues that he has alleged adequate claims of municipal liability based on the City's failure to train its officers and based on a municipal policy or custom that caused the violation of his rights. Before addressing Plaintiff's theories of municipal liability, it is worth noting that the granting of qualified immunity to the City's employees does not necessarily preclude the City being held liable. If the Section 1983 claims against the police officers were dismissed based on the lack of an allegation of a constitutional violation, that would defeat the claims against the City. Romero v. City of Grapevine, 888 F.3d 170, 178-79 (5th Cir. 2018). But here it is recommended that the claims against the officers be dismissed based on qualified immunity due to the lack of clearly established law. In these circumstances, the City may still be liable despite the dismissal of the claims against the officers. See Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist., 942 F.3d 258, 271 (5th Cir. 2019) (turning to Monell claim against school district even though claims against individual employees were dismissed due to lack of clearly established law); Howell v. Town of Ball, 827 F.3d 515 (5th Cir. 2016) (assessing Monell claim against the town after dismissing claims against individual employees due to lack of clearly established law); and Brown v. Lyford, 243 F.3d 185, 191 n. 18 (5th Cir. 2001) (explaining that a municipality may be liable if a plaintiff states a claim against an official but the official is protected by qualified immunity).

### B. Failure to Train

The City argues that Plaintiff has not pleaded any plausible claim of municipal liability.  Plaintiff's first response is that he has alleged a claim based on the City's failure to train its officers with regard to First Amendment rights at the Arena.  Plaintiff alleged in his amended complaint that the City failed to provide adequate training for its law enforcement officers "by failing to train them that the Bossier City Arena and the park surrounding it are public property and, therefore, the citizens using that property are entitled (to) their constitutional rights guaranteed by the First Amendment." ¶ 67.  Plaintiff alleged that this lack of training led Deputy Gilbert and the other individual defendants to believe that the Arena and park surrounding it are private property that allowed them to order citizens off of the property with no regard to their First Amendment rights.  ¶ 68.  Plaintiff also accused the City of failing to train its officers how to take into account the First Amendment rights of citizens on the Arena property by enforcing only reasonable time, place, and manner restrictions rather than blanket denials of access to the property.  ¶ 69.  This lack of training is alleged to be the moving force behind the removal of Plaintiff from the property.  ¶ 70.

A city policy "can take the form of a failure to train, provided that the failure is 'closely related to the ultimate injury' and not just attributable to a particular officer's shortcomings."  Garza v. City of Donna, 922 F.3d 626, 637 (5th Cir.), cert. denied, 140 S. Ct. 651 (2019), quoting City of Canton v. Harris, 109 S.Ct. 1197 (1989).  In addressing a city's potential liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  Shumpert, 905 F.3d at 317.

A plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a "moving force" in causing violation of plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy.  Shumpert, 905 F.3d at 317.  "The deficiency in training must be the actual cause of the constitutional violation."  Id.

Plaintiff does not focus on any particular inadequacy of the City's training of its police officers and deputy city marshals.  Rather, Plaintiff makes general allegations of failure to train.  He points to the incident in which he was involved and concludes, in his memorandum, that "[a]pparently" the officers received no training or improper training.  Doc. 26, pg. 17.  No particular facts about the City's training program are alleged.  It is not sufficient, when attempting to plead a claim of municipal liability based on failure to train, to point to a particular officer's alleged shortcomings in a single incident and assume that it must be the result of improper training.  That does not allege a plausible claim that a deficiency in training, as opposed to the mistake or misbehavior of the police officer, was the actual cause of any constitutional violation.

Plaintiff's complaint also lacks an allegation that the City was "deliberately indifferent" in adopting its training policy.  Plaintiff does argue in his memorandum that the alleged poor training could amount to deliberate indifference.  He does not take the typical route of arguing that deliberate indifference can be inferred from a pattern of constitutional violations.  Instead, he again argues that the single incident that happened to him is enough to make the inference.

The single-incident inference "is possible only in very narrow circumstances" because the Fifth Circuit has "generally reserved the single-incident method ... for cases in which the policymaker provides no training whatsoever with respect to the relevant constitutional duty, as opposed to training that is inadequate only as to the particular conduct that gave rise to the plaintiff's injury." Garza, 922 F.3d at 638, quoting Littell v. Houston Indep. Sch. Dist., 894 F.3d 616, 625 & n.5 (5th Cir. 2018).  "To base deliberate indifference on a single incident, 'it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy.' " Alvarez v. City of Brownsville, 904 F.3d 382, 390 (5th Cir. 2018) (en banc), quoting Snyder v. Trepagnier, 142 F.3d 791, 796 (5th Cir. 1998).

Plaintiff does not allege that there was no training whatsoever with respect to persons passing out leaflets at the Arena or similar public areas.  He alleges that the City did not provide "adequate" training.  Amended Complaint, ¶ 67.  His allegations are not sufficient to plead a plausible element of deliberate indifference based on the single incident exception or otherwise.  If the allegations in this case were enough, it would risk permitting the single-incident exception to "swallow the rule that forbids mere respondeat superior liability."  Roberts v. City of Shreveport, 397 F.3d 287, 295 (5th Cir. 2005).  See also Alvarez, 904 F.3d at 390 ("The causal link 'moving force' requirement and the degree of culpability 'deliberate indifference' requirement must not be diluted, for 'where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.' ").

### C. Policy or Custom

#### 1. Plaintiff's Burden

Plaintiff also argues that the City can be liable based on a policy or custom that caused a constitutional violation.  To plead such a claim of municipal liability under Section 1983, a plaintiff must allege that (1) an official policy (2) promulgated by the municipal policy maker (3) was the moving force behind the violation of a constitutional right.  Hicks-Fields v. Harris City, 860 F.3d 803, 808 (5th Cir. 2017).  The "official policy" prong includes the decisions of a government's law makers, the acts of its policy-making officials, and practices so persistent and widespread as to practically have the force of law.  Pena v. City of Rio Grande City, 879 F.3d 613, 621-22 (5th Cir. 2018).

To proceed beyond the pleadings stage, a complaint's "description of a policy or custom in its relationship to the underlying constitutional violation … cannot be conclusory; it must contain specific facts."  Spiller v. City of Texas City, 130 F.3d 162, 167 (5th Cir. 1997).  The Twombly standard discussed above "applies to municipal liability claims," so to survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Ratliff v. Aransas County, 948 F.3d 281, 284-85 (5th Cir. 2020).

#### 2. Plaintiff's Allegations

Plaintiff alleged that the Arena does not have any written or official policy regarding the distribution of leaflets (¶ 19), and the letter from the general manager states that the Arena allows persons to distribute pamphlets so long as they do not interfere with the safe ingress or egress of guests.  Plaintiff then alleged that the City has "a long-standing custom

of allowing police officers, employees and/or officials of [the Arena] to use their unfettered discretion to arbitrarily and capriciously remove individuals who are peacefully exercising their First Amendment rights from the [Arena] property." ¶ 20.  Plaintiff also offered the following allegations relevant to these issues:

55.  At all relevant times, Defendant the City did not have any official or unofficial viewpoint neutral policy regulating speech activities protected by the First Amendment to the United States Constitution and restricting access to the CenturyLink Center public sidewalks in the park in which the CenturyLink Center is located.

56.  Defendant City's custom or policy of requiring prior approval of a leaflet prior restraint on speech and, therefore, bears a "heavy presumption of unconstitutionality." Chiu v. Plano Independent School Dist., 339 F.3d 273, 280-81 (5th Cir. 2003).

57.  Defendant City's custom or policy of requiring prior approval of a leaflet before the leafleteer is allowed to distribute it on the CenturyLink property is facially unconstitutional because it is over-broad in that it does not provide for "specified brief period" of time within which the CenturyLink Center official shall approve or deny the request to distribute the leaflet on the CenturyLink Center property, and because it does not provide for expeditious judicial review, and that it does not provide that the censor bear the burden of going to court to suppress the speech.  Freedman v. State of Md., 380 U.S. 51, 58-59 (1965).

58.  Defendant City's failure to have a policy, or by acquiescence in the arbitrary and capricious denial of citizens' First Amendment rights by the CenturyLink Center officials, or by failing to train its police officers, employees and officials that the Bossier City Arena, aka CenturyLink Center, is public property and a traditional public forum, has created an unconstitutional custom by the City of Bossier City, Louisiana.  That unconstitutional custom or policy was the moving force behind the security officers of CenturyLink Center, police officers of the City, and Deputy Marshal of the City's, interference with Hershey's exercise of his First Amendment rights on the CenturyLink Center outdoor grounds.

59.  Defendant City's policy or custom as applied to Hershey is unlawful in at least the following ways:

     a.    It restricts more speech than necessary to achieve a significant government interest.

     b.    It restricts more speech than necessary to achieve a reasonable government interest.

     c.    It allows arbitrary and capricious enforcement.

     d.    It is based on content and viewpoint discrimination.

     e.    It utilizes prior restraint.

     f.    It preferentially allows commercial speech while prohibiting noncommercial speech.

     g.    It is not narrowly tailored to achieve a compelling, significant or legitimate government interest.

     h.    It provides no alternate channels for speech.

Plaintiff appears to be asserting claims in the alternative, which is allowed by Fed. R. Civ. Pro. 8(d)(2).  He alleges on one hand that (1) the city has a policy of requiring prior approval of a leaflet, which he bases on the statement of an Arena security officer.  On the other hand, he appears to take the Arena's general manager at her word that the public is allowed to distribute pamphlets, but he contends that the City has (2) a longstanding custom of allowing police officers and employees to use their unfettered discretion to remove persons from the property.

### 3. Prior Approval Policy

With respect to the alleged City policy of requiring prior approval of a leaflet, Plaintiff bases it only on the words of a security officer.  He does not point to any alleged ordinance, regulation, or written policy enacted by the City.  That leaves only the potential for an unwritten custom.  "A city cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to a city policymaker."  Pena, 879 F.3d at 623, quoting Hicks–Fields, 860 F.3d at 808.  The complaint in Pena "invite[d] no more than speculation that any particular policymaker, be it the chief of police or the

city commission, knew about the alleged custom." <u>Pena</u>, 879 F.3d at 623.  Thus, her allegation failed the second prong, which requires an allegation that the policy was promulgated by the municipal policymaker.  Plaintiff's allegations are lacking in this same regard, so dismissal of this theory of municipal liability is warranted.

### 4. Custom of Unfettered Discretion

Plaintiff next contends that he has pleaded a claim that the City has a longstanding custom of allowing police officers to use unfettered discretion to remove persons from the Arena property.  Once again, the complaint lacks any allegation that the City or any particular policymaker, whether it be the mayor, city council, or some other official, had actual or constructive knowledge of the alleged custom.  Specific facts are necessary to plead a claim that goes beyond alleging the wrongdoing of an officer and asserts a viable claim of a widespread custom known to city officials that could result in municipal liability. Otherwise, the doctrine of respondeat superior has crept in where it is not allowed.

The allegation of a custom itself is also lacking in supporting allegations.  The Fifth Circuit set forth the rules for such customs in <u>Webster v. City of Houston</u>, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)  and required: "A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."  Plaintiff's complaint describes only one incident where an officer allegedly exercised discretion to remove some who was handing out leaflets. "Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability."  <u>Bennett v.</u>

City of Slidell, 728 F.2d 762, 768 n. 3 (5th Cir. 1984).  Thus, "[a] customary municipal policy cannot ordinarily be inferred from single constitutional violations."  Piotrowski v. City of Houston, 237 F.3d 567, 581 (5th Cir. 2001), citing Webster, 735 F.3d at 851.  The facts offered in the complaint are not adequate to plead a plausible claim of an actionable municipal custom.

**Conclusion**

Plaintiff has alleged sufficient facts to overcome the forum and viewpoint discrimination challenges.  But the city police officers are entitled to dismissal based on qualified immunity because Plaintiff has not made an adequate showing of clearly established law in the context of this case.  The City of Bossier City is entitled to dismissal because the amended complaint does not allege sufficient facts to plead an actionable Monell claim of municipal liability.

Plaintiff has once amended his complaint, he did not seek leave to amend a second time when faced with the challenges presented by the motion to dismiss, and his memorandum in opposition to the motion to dismiss did not suggest that further amendment could cure the challenges.  The court would have almost certainly granted leave to amend after the motion to dismiss was filed, but any request to amend after the court has invested time in making this report and recommendation will not be granted by the undersigned.  Such post-recommendation requests to amend are heavily disfavored because they are considered sandbagging and result in serial motion practice and a great waste of the court's resources that could have easily been avoided.

Accordingly, it is recommended that the Motion to Dismiss (Doc. 19) be granted and that all claims against the City of Bossier City,  Bobby Gilbert, and Daniel Stoll be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 23rd day of August, 2021.

Mark L. Hornsby
U.S. Magistrate Judge