UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RICHARD HERSHEY | CIVIL ACTION NO. 21-cv-460 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| CITY OF BOSSIER CITY, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

This civil rights action was filed by Richard Hershey ("Plaintiff") after a policeman ordered him to leave a public park or be arrested due to his distribution of leaflets on the grounds of the park. Plaintiff alleges that his threatened arrest and/or ejectment from the park violated his First Amendment rights. The district court later dismissed all claims against the law enforcement officers involved in the incident and the City of Bossier City. The sole claims that remain are those asserted under 42 U.S.C. § 1983 against three private citizens who were hired as security guards by a company which manages the public arena.

Before the court is a motion to dismiss (Doc. 28) filed by the security guards. They contend that the facts offered in the complaint are not adequate to plead a plausible § 1983 claim as their conduct was not "fairly attributable" to the City. This court agrees. For the reasons that follow, it is recommended that the motion to dismiss be granted.

**Rule 12(b)(6)**

The security guards move for dismissal based on Fed. R. Civ. P. 12(b)(6). In assessing the motion, the court must accept as true all well-pleaded facts in the complaint and view those facts in the light most favorable to the plaintiff. In re Katrina Canal

Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). Those facts must state a claim that rises above the speculative level and is plausible on its face. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007); Amacker v. Renaissance Asset Mgmt., LLC, 657 F.3d 252, 254 (5th Cir. 2011). A complaint is not sufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 127 S.Ct. at 1965).

**The Allegations**

The relevant facts for purposes of assessing the motion to dismiss are found in Plaintiff's First Amended Complaint (Doc. 17). Plaintiff, a senior citizen from Missouri, is a vegetarian advocate whose ethical beliefs compel him to share his message with others. He is compensated by various nonprofit organizations for his advocacy and distribution of literature. First Amended Complaint, ¶¶ 4, 15-17.

A Christian rock concert known as Winter Jam was held on February 28, 2020 at a Bossier City arena that was then known as CenturyLink Center. ¶ 24. The facility has since been rebranded as Brookshire Grocery Arena (the "Arena"). The Arena is owned by the City, but it is managed by a private company. ¶ 13, Ex. 1, Doc. 25. The security guards work for the management company, not the City. ¶¶ 8-10.

The Arena is situated in a public park, with no restriction on access to any of the sidewalks and streets through the park. ¶ 21. The Arena does not have any written or official policy regarding the distribution of leaflets on its grounds, and it does not have any formal application process to request permission to distribute leaflets. ¶¶ 18-19. Instead, the City has a longstanding custom of allowing police officers or officials of the Arena to

use unfettered discretion to remove persons who are peacefully exercising their First Amendment rights. ¶ 20.

Plaintiff was on a public sidewalk on the grounds of the Arena and distributing free religious booklets on behalf of a nonprofit organization named the Christian Vegetarian Association. ¶¶ 14-15. His activity was entirely peaceable and non-aggressive, and he did not create a disturbance or interfere with pedestrian or vehicular traffic. ¶¶ 22-23. Also, out of concern for safety, he did not distribute his booklets on the staircases of the Arena or in the parking lots. ¶ 26. At least one other person, not associated with Plaintiff, was distributing commercial advertisement cards for an internet radio station. ¶ 27.

Plaintiff was initially encountered by two policemen and one of the security guards, Tyshon Harvey ("Harvey"). ¶¶ 28-30. During that initial encounter, the policemen informed Plaintiff that he could either leave the public park or be handcuffed and taken to jail. ¶¶ 31-34. After some arguing about his legal rights to continue handing out his literature in the park, Plaintiff attempted to leave the park but was blocked by one of the policemen. ¶ 39. The other two security guards, David Smith ("Smith") and Eugene Tucker ("Tucker"), arrived on the scene shortly thereafter. ¶ 40. After some additional back and forth between Plaintiff and the policemen, Plaintiff asked the group at large why he was not allowed to hand out his literature when there had been another person handing out business cards in essentially the same location. ¶44. Harvey responded that Plaintiff did not have the approval of the venue to hand out his literature, and, as a result, he would have to leave the park. ¶¶ 45-47. During this entire episode, Smith and Tucker were present and used their "command presence" to assist the two policemen and Harvey in

removing Plaintiff. ¶ 48. Following this encounter, Plaintiff left the park and, fearing arrest, has not returned since. ¶¶ 49-51.

**Section 1983 Analysis**

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Cornish v. Correctional Servs. Corp., 402 F.3d 545, 549 (5th Cir. 2005). "[T]here can be no § 1983 liability unless the plaintiff has "suffered a constitutional violation ... at the hands of ... a state actor." Doe ex rel. Magee v. Covington Cty. Sch. Dist., 675 F.3d 849, 867 (5th Cir. 2012) (en banc).

Plaintiff concedes that the three security guards are private citizens. "Private individuals generally are not considered to act under color of law," Ballard v. Wall, 413 F.3d 510, 518 (5th Cir. 2005), but "private action may be deemed state action when the defendant's conduct is 'fairly attributable to the State,'" Priester v. Lowndes County, 354 F.3d 414, 423 (5th Cir. 2004) (quoting Bass v. Parkwood Hosp., 180 F.3d 234, 241 (5th Cir. 1999)). To establish fair attribution,

> the plaintiff must show: (1) that the deprivation was caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may fairly be said to be a state actor.

Moody v. Farrell, 868 F.3d 348, 352 (5th Cir. 2017) (citing Daniel v. Ferguson, 839 F.2d 1124, 1130 (5th Cir. 1988)).

The Supreme Court utilizes different tests for determining whether the conduct of a

private actor can be "fairly attributable" to a state actor: (1) the public function test, (2) the nexus or state-action test, (3) the joint-action test, and (4) the state coercion or encouragement test.[1] Cornish, 402 F.3d at 549-550. Regardless of which test is used, "[d]eciding whether a deprivation of a protected right is fairly attributable to the State 'begins by identifying the specific conduct of which the plaintiff complains.'" Id. at 550 (quoting Am. Mfrs. Mut. Ins. v. Sullivan, 526 U.S. 40, 51, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)).

### a. Public function test

Under the public function test, a "private entity may be deemed a state actor when that entity performs a function which is traditionally the exclusive province of the state. While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the state." Bass, 180 F.3d at 241-42 (internal citations and quotation marks omitted). Thus, to satisfy the public function test, the function at issue must be both traditionally and exclusively governmental.

Applying the public function test to the conduct of Smith and Tucker, the court concludes that the Complaint lacks sufficient facts to assert a plausible claim that they engaged in any public function. Plaintiff's sole assertion about the conduct of Smith and Tucker is that they were present when a policeman ordered Plaintiff to leave or face arrest and they "assisted" the police by virtue of their "command presence." ¶ 48. The Complaint

---

[1] The Supreme Court has not resolved "[w]hether these different tests are actually different in operation or simply different ways of characterizing [this] necessarily fact-bound inquiry." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

does not suggest that Smith or Tucker did anything more than merely observe the Plaintiff leaving the park after a policeman asked him to leave or face arrest. They were not present when the policeman spoke with Plaintiff. They are not alleged to have spoken with or touched Plaintiff. They are not alleged to have encouraged the police to eject Plaintiff from the park. Even if they had, encouraging the police to act does not confer state-actor authority to private parties. Private parties do not become state actors merely by calling upon law enforcement for assistance. Daniel, 839 F.2d at 1130. The "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives." Blum v. Yaretsky, 457 U.S. 991, 1004-05 (1982); Manax v. McNamara, 842 F.2d 808, 813 (5th Cir. 1988) ("Providing information to the state and pressing for more state action against an individual, without more, cannot suffice to make a private entity liable under section 1983 as a state actor"); Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc., 673 F.2d 771, 772 (5th Cir. 1982) (where a police officer made his own decision to arrest, his reliance on a private party's information did not convert the private party into a state actor).

Next, the court will examine the conduct of Harvey. Plaintiff complains that Harvey was present during his initial encounter with a policeman. ¶¶ 28-30. He alleges that after the policeman ordered him to leave or face arrest, he decided to leave. ¶ 38. As he was leaving, he asked Harvey why he needed to leave when other people engaging in similar conduct were permitted to stay. ¶ 44. Harvey told Plaintiff that he did not have the approval of the venue to distribute his literature, and, as a result, he would have to leave. ¶¶ 45, 47.

These facts do not show that Harvey performed a function traditionally within the exclusive prerogative of state officials. In Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1929, 204 L. Ed. 2d 405 (2019), the Supreme Court explained that "to qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have *traditionally and exclusively* performed the function." 139 S. Ct. at 1929 (emphasis added). "Under the Court's cases, those functions include, for example, running elections and operating a company town." Id. (collecting cases). Here, Plaintiff cites no authority for the position that the security guards (or their employer) performed a traditional and exclusive function of the government.

Importantly, the Complaint does not allege that the security guards, or their employer, derived any power from the City to regulate speech in the public park. To the contrary, Plaintiff alleged that the Arena "does not have any written or official policy prohibiting, regulating or licensing the distribution of leaflets on its grounds." ¶ 19. The Arena does not have any formal application process for requesting permission to distribute leaflets (¶ 18), and the City employs a longstanding custom of allowing police officers and other officials "to use their unfettered discretion to arbitrarily and capriciously remove individuals who are peacefully exercising their First Amendment rights" on the property. ¶ 20.

The management company's lack of power to regulate speech is important because the focus of the state actor inquiry is whether the source of the private actor's power comes from the state. "The Supreme Court has explained that 'when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become

agencies or instrumentalities of the State and subject to its constitutional limitations.'" Rosborough v. Mgmt. & Training Corp., 350 F.3d 459, 460 (5th Cir. 2003) (quoting Evans v. Newton, 382 U.S. 296, 299, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966)). If the private actor derived no actual power from the state, such as the power to regulate speech, the private actor cannot be said to have rendered a public function.

The Complaint did not plausibly allege that the security guards were "endowed by the State with powers or functions governmental in nature." Id. Where, as here, the City retained the ultimate power to enforce its laws within the public park and to arrest people for violating those laws, private actors cannot be said to have public-function authority. "If a police officer can decline or agree to arrest the individuals whom the private actor has detained or arrested for protesting on the sidewalk, then the private actor does not have the ultimate public-function authority." Solomon v. Las Vegas Metro. Police Dep't, 441 F. Supp. 3d 1090, 1098 (D. Nev. 2020). Accordingly, the Complaint does not satisfy the public function test.

### b. Nexus or state-action test

The nexus test "considers whether the State has inserted 'itself into a position of interdependence with the [private actor, such] that it was a joint participant in the enterprise.'" Cornish, 402 F.3d at 550 (alteration in original) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 357–58, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). "[T]he focus of the inquiry into whether a private actor can be subjected to constitutional liability is whether 'such a close nexus between the State and the challenged action' exists 'that seemingly private behavior may be fairly treated as that of the State itself.'" Morris v.

Dillard Dep't Stores, Inc., 277 F.3d 743, 747-48 (5th Cir. 2001) (quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)). To satisfy the nexus test, the court must find that the state has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum, 457 U.S. at 1004.

There are simply no allegations in the Complaint asserting or implying that the government exerted coercive power or that it inserted itself into a position of "interdependence" with the security guards or their employer. There is nothing in the Complaint to indicate the existence of a "close nexus" between the challenged action of the security guards and the State. Accordingly, the Complaint does not satisfy the nexus test.

### c. Joint action test

The joint action test asks whether private actors were "willful participant[s] in joint action with the State or its agents." Cornish, 402 F.3d at 549 (alteration in original) (quoting Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980)). To satisfy this test, a plaintiff "must allege facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents." Pikaluk v. Horseshoe Ent., L.P., 810 F. App'x 243, 246–47 (5th Cir. 2020) (citing Polacek v. Kemper County, 739 F. Supp. 2d 948, 952 (S.D. Miss. 2010)). A meeting of the minds does not occur merely by calling upon law enforcement, even when the information furnished is used to effect an arrest. Id. *see*

*also* Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994) (internal citations omitted) (observing that, to prove a conspiracy, a plaintiff must provide evidence of "an agreement between the private and public defendants to commit an illegal act....").

Although the Complaint expressly alleges that the security guards acted as "willing participants" in "joint action" with the law enforcement officers, ¶¶ 8-10, these assertions, without more, are simply a "formulaic recitation of the elements of a cause of action" that will not satisfy the federal pleading standard and are insufficient to satisfy the joint action test. Twombly, 550 U.S. at 555. Plaintiff included no facts in his Complaint which would suggest that the security guards entered into an agreement or were acting at the direction of any government official. The Complaint does not allege that there was a meeting of the minds or a conspiracy to deprive Plaintiff of his constitutional rights. The Complaint does not allege that there was a plan, custom or policy that substituted the judgment of the security guards for that of the police or allowed the private security guards to exercise state power. Accordingly, the Complaint does not satisfy the joint-action test.

### d. State coercion or encouragement test

Under the state coercion test, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Bass, 180 F.3d at 242. This test is based on the degree of the state's influence over the private actor; thus, the test is broader in reach than the private function test. "Coercion" and "encouragement" refer to the "kinds of facts that can justify characterizing an ostensibly private action as private instead." Brentwood, 531 U.S. at 303. That is, did

the private actor have a choice to refrain from engaging in the conduct?

In this case, Plaintiff has not claimed that he can satisfy the state coercion or encouragement test. The Complaint fails to allege facts to show that there was any coercion by any state actor. Accordingly, the Complaint does not satisfy the state coercion test.

## Conclusion

For the above reasons, the security guards are entitled to dismissal because the Amended Complaint does not allege sufficient facts to plead an actionable § 1983 claim. Accordingly, it is recommended that the Motion to Dismiss (Doc. 28) be **granted** and that all claims against Tyshon Harvey, David Smith, and Eugene Tucker be dismissed with prejudice.

As this court stated in the prior ruling (Doc. 33), Plaintiff has once amended his complaint, he did not seek leave to amend a second time when faced with the challenges presented by the motion to dismiss, and his memorandum in opposition to the motion to dismiss did not suggest that further amendment could cure the challenges. The court would have almost certainly granted leave to amend after the motion to dismiss was filed, but any request to amend after the court has invested time in making this report and recommendation will not be granted by the undersigned. Such post-recommendation requests to amend are heavily disfavored because they are considered sandbagging and result in serial motion practice and a great waste of the court's resources that could have easily been avoided.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 1st day of November, 2021.

Mark L. Hornsby
U.S. Magistrate Judge